UNITED STATES of America, Appellee,

v.

Daniel Anderson BURKETT, Appellant.

No. 86–2280.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1987.

Decided June 23, 1987.

Rehearing and Rehearing En Banc Denied July 27, 1987.

Robert D. Arb, St. Louis, Mo., for appellant.

Steven A. Muchnick, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Daniel Anderson Burkett appeals his three count conviction arising from the break-in at the Dittmer, Missouri post office. Burkett was convicted of conspiracy to break into the post office and commit larceny; breaking into a United States Post Office intending to commit larceny; and injuring property, a safe of the United States, valued in excess of $100, in violation of 18 U.S.C. §§ 371, 2115, and 1361 (1982), respectively. He argues that the

district court[1] erred in admitting evidence of his involvement in unrelated burglaries in 1979, in allowing the United States Attorney to ask him during cross-examination whether he ever committed other burglaries, and in denying his request to discover an informant's identity. We affirm the judgment of the district court.

The United States Post Office in Dittmer, Missouri was burglarized during the night and early morning hours of May 4 and 5, 1986. The U.S. Postal Inspection Service's on-scene investigation revealed that the burglars had cut the wires leading to the post office and had gained entry by prying up the lower left hand corner of the rear door. The burglars made large holes in the side and bottom of the post office safe. $150 in cash was missing and approximately $700 to $750 in stamps was missing or damaged by the contents of a fire extinguisher that had been sprayed on the floor. The safe had been damaged in the approximate amount of $950.00. An undisclosed informant told the Sheriff's office that he had seen Tony Glacken's dog outside the post office on the night of the burglary.

Kevin Handley and Tony Glacken each pled guilty to a charge of conspiring to burlgarize the post office. They implicated Burkett in the burglary and agreed to testify at Burkett's trial if the government would charge them only with the conspiracy count and make their cooperation known to the court at the time of sentencing. At trial, they testified that on the night of May 4, 1986, Glacken and Burkett had discussed stealing money while the three were at Glacken's south St. Louis apartment, an apartment shared by Holly Jensen and Carol Powell. Later that night Glacken, Handley, and Burkett took Handley's pick-up truck to Dittmer, Missouri, the town in which Handley and Burkett lived. Burkett suggested they burglarize the Dittmer post office to get the money from the safe. Burkett brought an axe from home and picked up a pry bar at a construction site. Burkett cut the wires on the post office roof and he and Glacken used the pry bar to open the back door. Glacken and Burkett took turns beating on the safe while Handley acted as lookout. After four or five hours they put two holes in the safe and Burkett and Glacken each obtained $42. They wore gloves to prevent leaving fingerprints, and also tried to cover up their fingerprints by spraying the fire extinguisher. At dawn, Burkett, Glacken, and Handley all walked back to the Handley house.

Burkett testified that he stayed home that evening playing Monopoly with his parents. He specifically recalled that it was the evening of May 4 because he and his parents discussed an unusual lady who visited their Bible study group. His parents testified likewise. Burkett denied burglarizing the post office.

Burkett filed a motion in limine to prevent the government from introducing prior bad act evidence. The district court denied the motion, holding that evidence of other crimes was admissible to show motive and intent. Tr. at 1–32. At trial, the government introduced evidence that Burkett and three persons broke into the Dittmer Bi-Rite in 1979, stole the safe from the store and took $9. The government also introduced testimony that in 1979 Burkett had implicated himself and two accomplices in a 1979 burglary of the same Dittmer, Missouri post office. The prosecution also cross-examined Burkett as to his involvement in a 1979 break-in at a school and a church. In both instances Burkett had signed a statement confessing to breaking a window of the building and stealing or breaking into a safe.

After a two day trial, the jury returned a verdict of guilty on all counts. Burkett was sentenced to six years imprisonment, followed by a five year probation period. This appeal followed.

## I.

■ Burkett first contends that it was error to admit evidence and testimony of

---

1. The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri.

other burglaries to prove his intent to commit this crime. Evidence of other acts or crimes is admissible under Rule 404(b) of the Federal Rules of Evidence to prove intent if there is a material issue as to intent, and if the proffered evidence is relevant to that issue, is clear and convincing, relates to a wrongdoing similar in kind and reasonably close in time to the charge at trial, and is more probative than prejudicial. *United States v. Miller*, 725 F.2d 462, 466 (8th Cir.1984); *United States v. Two Eagle*, 633 F.2d 93, 96–97 (8th Cir. 1980). Burkett asserts that because the government had notice that he had intended to rely on an alibi defense, the issue of intent was effectively removed from the case, and his prior wrongful acts were not material. He cites cases in other circuits holding that it is not appropriate to introduce evidence of prior wrongful acts or crimes when the defendant does not plan to contest the issue of intent, but instead relies on an alibi defense. *See United States v. Powell*, 587 F.2d 443, 448 (9th Cir.1978); *United States v. Williams*, 577 F.2d 188, 191 (2d Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *United States v. Ring*, 513 F.2d 1001, 1007 (6th Cir.1975).

We have held, however, that the government may introduce evidence of the defendant's earlier wrongs in its case-in-chief without waiting for the defendant to contest the issue of intent. *Miller*, 725 F.2d at 466; *United States v. Burchinal*, 657 F.2d 985, 993 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. Engleman*, 648 F.2d 473, 478–79 (8th Cir.1981); *United States v. Adcock*, 558 F.2d 397, 402 (8th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); *United States v. Conley*, 523 F.2d 650, 654 (8th Cir.1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976). In *Adcock*, we rejected an argument that evidence of similar acts could not be introduced where the issue of intent was not first raised by the defendant. We held that where intent is an essential element of the crime and the government must establish in its case in chief all of the essential elements of the crime, the government need not await the defendant's denial before offering evidence of other similar acts. *Adcock*, 558 F.2d at 402. The government cannot safely withhold evidence of intent until the defendant closes his case because the government might then be foreclosed from introducing such evidence if the defendant does not take the stand. Here, each of the crimes charged required the government to prove specific intent. *See United States v. Feola*, 420 U.S. 671, 686, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975) (conspiracy); *United States v. Jones*, 607 F.2d 269, 273–74 (9th Cir.1979) (18 U.S.C. § 1361), *cert. denied*, 444 U.S. 1085, 100 S.Ct. 1043, 62 L.Ed.2d 771 (1980); *Sutton v. United States*, 391 F.2d 592, 593 (5th Cir.1968) (18 U.S.C. § 2115). Although Burkett had notified the government of his intent to offer an alibi defense, he was not required to maintain that defense when the time came. The government might then have been placed in the untenable position of not having adequately proved an essential element of the crime charged.

Burkett also contends that the evidence is not relevant because the prior acts were not "sufficiently peculiar, unique or bizarre as to constitute [his] personal signature on each crime." Appellant's Brief at 21. This overstates the similarity necessary to admit such evidence. When admitted for the purpose of showing intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent. *United States v. O'Brien*, 618 F.2d 1234, 1238 (7th Cir.), *cert. denied*, 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980). Here, each of the prior acts involved forcible entry into buildings in order to steal money from a safe. Moreover, one of those forcible entries involved the very same Dittmer, Missouri post office. The court instructed the jury that they should consider such evidence only in determining Burkett's state of mind or intent. We believe this properly limited the jury's consideration of this evidence.

Burkett also contends that the 1979 acts were so remote in time that their

probative value was outweighed by their prejudicial effect on the jury. However, there is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent. *See Engleman*, 648 F.2d at 479 (approving a thirteen year gap between offenses). Under Rule 404(b), the district court has broad discretion in determining the admissibility of other wrongful acts. *United States v. Hutchings*, 751 F.2d 230, 237–38 (8th Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 92, 88 L.Ed.2d 75 (1985); *United States v. Gomez*, 733 F.2d 69, 72 (8th Cir.1984). Considering the already overwhelming strength of the testimony of Kevin Handley, Tony Glacken, Holly Jensen and Carol Powell, the government might not have needed the other crimes evidence on the issue of intent. Nonetheless, according appropriate deference to the district court's opportunity to examine the evidence and determine its prejudicial impact, *see Two Eagle*, 633 F.2d at 97, we cannot say that the district court abused its discretion in admitting this evidence.

## II.

Burkett also claims that the district court erred in permitting the government to cross-examine him as to whether he had committed any burglaries other than the burglary of the Bi-Rite Store about which he testified on direct examination. Burkett asserts that these other burglaries were not relevant to any issues in the case and that the cross-examination went beyond the scope of his direct testimony.

■ Cross-examination of the witness may include "matters affecting the [witness'] credibility." Fed.R.Evid. 611(b). In his direct testimony, Burkett referred to the burglary of the Dittmer Bi-Rite and testified that he had cooperated with authorities in helping to find the other people who were involved. He also stated that there were many other burglaries that he solved for the authorities. On cross-examination, the government asked him if he had been involved in other burglaries, and Burkett said he had not. The government then introduced evidence of the other oc-

currences. We are satisfied that Burkett opened the door to this cross-examination by stating that he was involved only in the Bi-Rite burglary and that he had helped the police to solve a number of other burglaries. *See United States v. Bent*, 707 F.2d 1190, 1194 (11th Cir.1983) (when portions of direct testimony suggested legitimate reasons for prior acts, defendant opened the door to cross-examination on these acts), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984); *United States v. Hernandez*, 646 F.2d 970, 977–78 (5th Cir.) (cross-examination as to defendant's familiarity with drugs reasonably suggested by his denial on direct examination that he knew the contents of the packages containing methaqualone), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981).

## III.

■ Burkett's final claim of error is the district court's refusal to order disclosure of the informant's name or, alternatively, the exact nature and source of his information concerning Burkett's involvement in the burglary. " 'In cases involving the "tipster" type of informant, who merely conveys information to the government but neither witnesses nor participates in the offense, courts generally hold that disclosure is not material and therefore not required.' " *United States v. House*, 604 F.2d 1135, 1140 (8th Cir.1979), *cert. denied*, 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980) (quoting *United States v. Barnes*, 486 F.2d 776, 778 n. 3 (8th Cir.1973)). Here, the informant simply advised the Sheriff's department that he had seen Tony Glacken's dog outside the post office on the night of the burglary. Although Burkett claims the source of this information was crucial in determining whether someone with an "axe to grind" supplied the information to the informant, this general assertion provides an insufficient basis for concluding that the district court abused its discretion in refusing to require disclosure. *See United States v. Grisham*, 748 F.2d 460, 463 (8th Cir.1984) ("a trial court acts well within its discretion in refusing to order disclosure * * * where the materiali-

ty of an informant's potential testimony is not demonstrated").

The judgment of conviction is affirmed.