**UNITED STATES of America, Appellee,**

v.

**Theodore MOTHERSHED, a/k/a Teddy Mothershed, Appellant.**

**No. 87–1913.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1988.

Decided Oct. 14, 1988.

John D. Ackerman, Sioux City, Iowa, for appellant.

Robert L. Teig, Asst. U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before ARNOLD, and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

ARNOLD, Circuit Judge.

Theodore Mothershed was convicted of aiding and abetting a bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(a), and sentenced to a prison term of twenty years and a special assessment of $50.00. For reversal he argues that the District Court erred in refusing his instruction on how the jury should weigh accomplice testimony, that it erred in admitting evidence of his prior conviction for possessing stolen bank money, that the evidence was insufficient to support the jury's verdict, and that his lawyer was ineffective at trial. We agree that Mothershed's prior conviction should not have been admitted, so we reverse the judgment and remand for a new trial. On the other claims of error, we hold that the evidence was sufficient and that the Court was correct to refuse the accomplice-testimony instruction. We do not reach the ineffective-assistance claim.

I.

The government's chief witness at trial was Monroe Johnson, Mothershed's alleged accomplice. Johnson testified that between about 10:30 and 11:00 a.m. on September 25, 1986, the day of the robbery, he and Mothershed were together in Cook Park in Sioux City, Iowa, using cocaine and drinking beer, and they decided to rob a nearby branch of the First Interstate Bank in order to get money to buy more cocaine. They drove to CJ's Tavern, which is about a half-block from the First Interstate branch, and parked on the street. While Johnson went inside CJ's for a drink, Mothershed went to the bank to "case it out." A few minutes later they met in Mothershed's car, and Mothershed told Johnson

there were only two women tellers in the bank. Johnson then pulled a ski mask over his face, ran into the bank, dived on top of the counter-top at one of the teller's windows, opened the cash drawer, took $5,600 in twenty-dollar bills, ran out of the bank and through the alley leading to CJ's, leaped into the trunk of Mothershed's car, and was spirited away to a safe place, where he and Mothershed divided the money.

Other government evidence tended to corroborate parts of Johnson's testimony: the bank's video camera recorded both an individual who looked like Mothershed at a teller's window about thirty minutes before the robbery and the robbery itself, which occurred just as Johnson described it, and another witness, Bobby Bates, testified that he saw Johnson and Mothershed together in Mothershed's car, which was parked on the street near CJ's, about twenty minutes before the robbery.

Mothershed also testified at trial. He stated he had won a large sum of money gambling at CJ's and at an after-hours party at a nearby house during the night and early morning before the robbery. He saw Johnson at Cook Park later that morning, but did not discuss or propose a bank robbery. Johnson left the park soon after Mothershed arrived, but Mothershed stayed there until about noon. Then he drove to CJ's, parked on the street, and saw Johnson at a crap game in the parking lot behind the bar. Johnson complained that he had no money for gambling, and Mothershed lent him $200 from his previous night's winnings. Other people then started asking him for money, and he went inside the bar to avoid them. But the solicitations continued, and he started thinking about what he could do to get away from the throng. It occurred to him that he had some foreign currency in his pocket and at home, and he decided to go to the First Interstate branch to find out how to exchange it. He went to the bank, about thirty minutes before the robbery, and told the teller he had some African and European money he wanted to exchange. The teller, Mary Kobbe, told him she could check current rates of exchange, but that

he should go to the main branch if he wanted actually to exchange it. So Mothershed left the bank and went back to CJ's parking lot, where he saw Johnson again.

Mothershed told Johnson he had just been to the bank, and Johnson asked who was working there, explaining that he had some checks he could cash to repay Mothershed the money he owed him, but he had no identification and thus had to go to a particular teller who would cash the checks for him anyway. Mothershed described the two women he had seen in the bank, and Johnson said neither was the teller he wanted, and that he would have to meet Mothershed later that day to pay him back. They agreed to meet at Johnson's sister's house at 2:00 p.m. Mothershed left CJ's a few minutes later, and when he got to his car he saw a friend, Dale Moss, and talked to him briefly. While he and Moss were talking, Bobby Bates walked by and asked Mothershed for a ride, which he refused.

Shortly after 1:00, Mothershed went to Johnson's sister's house. Johnson was already there; he was excited and agitated, and asked Mothershed to follow him to the basement, where he took $400 in twenty-dollar bills out of a box (which contained even more money) and gave it to Mothershed. Johnson and Mothershed stayed together until about 3:00 p.m. Mothershed later went back to Johnson's sister's house, where he again saw Johnson, at 6:00 or 7:00 p.m. At this point, Johnson said he had heard that Mothershed had been "picked up," but Mothershed said he had not, and did not know what Johnson was talking about.

Later that evening, the police did pick up Mothershed for questioning. He admitted having been in the bank that day but claimed he could prove it was before the robbery because he knew he had been videotaped. He admitted further that he had seen Johnson several times that day and had received money from him, but he denied having planned or discussed robbing the bank. Mothershed was released, and Johnson was arrested the next day and charged with the robbery. On the eve of trial, Johnson gave a statement implicating Mothershed in the robbery, and agreed to

plead guilty and cooperate fully in the case against Mothershed in return for consideration at sentencing.

## II.

We first consider the issue on which we reverse, the admission of Mothershed's prior conviction. One of the investigating FBI agents, Ron Grove, testified that when he learned Johnson and Mothershed had been seen near the bank close to the time of the robbery, he ran their names through the FBI data bank, and found that Mothershed had a prior felony conviction, about ten years old. When the government's lawyer asked Grove what the conviction was for, the defense objected, and there was a side-bar conference. Since it was late, the District Court excused the jury for the day and asked the lawyers to be prepared to discuss the admissibility of the conviction before trial the next morning. At that conference, the government argued:

> Well, Your Honor, I think the evidence is clearly admissible under [Federal] Rule [of Evidence] 404(b) as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake ....
>
> * * * * * *
>
> Your Honor, under 404 we are offering it ... for other purposes such as proof of motive which is I guess what we are offering it for, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. All of those purposes, but I would say primarily for motive, intent, preparation, opportunity, planning and knowledge.

Tr. 218–19, 223.

The District Court found the evidence admissible, holding it relevant to a material

issue, Mothershed's intent. Tr. 224–25. The Court then read the jury a limiting instruction [1] relating to the prior conviction, and the examination of Grove resumed:

> Q: Mr. Grove, what is your understanding with regard to the conviction that you testified to yesterday? What was that for?
>
> * * * * * *
>
> A: The felony charge for which he was convicted was for possession of stolen bank robbery money.

Tr. 228–29.

Mothershed's lawyer had objected repeatedly to the admission of this evidence, and, after this response, he also objected that Grove had misstated the crime for which Mothershed had been convicted, arguing that the charge was possession of stolen bank money, not bank *robbery* money. Tr. 229–30. To this the government replied out of the hearing of the jury:

> Your Honor, if this witness was permitted further testimony with regard to this, he would indicate that in fact it was a bank robbery, in fact that he has read the reports and that he has checked out the judgments, and that's where the funds came from. There was a bank robbery.

Tr. 230. The Court overruled this objection also.

This Court has repeatedly stated that the admission of prior bad acts under Fed.R. Evid. 404(b) requires that the evidence be relevant to a material issue, clear and convincing,[2] more probative than prejudicial, and similar in kind and close in time to the crime charged. *E.g., United States v. Mil-*

---

**1.** The Court stated:

"[Y]ou are about to hear evidence that the defendant previously committed a crime similar to the one in this case. You may not use this evidence to decide whether the defendant carried out the physical acts involved in the crime charged here. However, if you are convinced beyond a reasonable doubt that the defendant did carry out the acts charged here, then you may use this evidence when you are deliberating concerning a previous crime to

decide whether the defendant may have had a motive or intent or opportunity or a plan to commit the crime as charged here.
Tr. 227–28.

**2.** In *Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988), the Supreme Court held that a prior bad act need be proved only by a preponderance of the evidence. This holding of course supersedes our previous rule.

*ler*, 725 F.2d 462, 466 (8th Cir.1984). "We consider 404(b) a rule of inclusion, permitting admission of such evidence unless it tends to prove only the defendant's criminal disposition." *United States v. O'Connell*, 841 F.2d 1408, 1422 (8th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988) (citation omitted). But this does not mean that all such evidence is admissible simply on invocation of the Rule. To borrow the words of Judge Newman of the Second Circuit:

> This Circuit's use of the inclusionary approach to similar act evidence does not obviate the need to identify the fact or issue to which the evidence is relevant. All evidence objected to on relevancy grounds must be claimed to prove some fact or issue "of consequence to the determination of the action." Fed.R.Evid. 401. The exclusionary approach to similar act evidence obliges the trial court to determine whether the issue sought to be proved is among the traditional exceptions to the rule barring prior act evidence; the inclusionary approach permits the evidence to be used to prove any issue other than propensity, but the trial court is still obliged to ask, "Is the evidence in any way relevant to a fact in issue otherwise than by merely showing propensity?" Stone, *The Rule of Exclusion of Similar Fact Evidence: America*, 51 Harv.L.Rev. 988, 1004 (1938).

*United States v. Figueroa*, 618 F.2d 934, 939 n. 2 (2d Cir.1980).

 We have not been aided in our review of the relevancy issue in this case by the "laundry list" approach taken at trial. Rather than name the particular issue on which this conviction was relevant, it appears that the government simply read the list of issues for which prior bad acts can be admitted under Rule 404(b). This is not in itself a basis for reversal, but it is a practice we discourage. "Rather than making a broad reference which merely restates the components of the rule, the district court should specify which components of the rule form the basis of its ruling and why." *United States v. Harvey*, 845 F.2d 760, 762 (8th Cir.1988). We expect the same from the proponent of the

evidence. If no particular issue is articulated as the basis for the relevancy of the prior-bad-act evidence, the reviewing court is left with the burden of reconstructing all of the material issues from the trial and determining whether the evidence is relevant to any one of them. That is our task here.

Mothershed's plea of not guilty placed in issue every element of the crimes charged. On Count I the issues were whether (1) Mothershed, in concert with Johnson, took money or property from the bank, (2) the bank's deposits were insured by the Federal Deposit Insurance Corporation, (3) the property was taken by means of force, violence, or intimidation, and (4) Mothershed acted knowingly, willfully, and intentionally. The first two issues on Count II were substantially the same as under Count I, and the other two were whether money was taken with an intent to steal and whether the amount taken exceeded $100. The aiding-and-abetting charge placed in issue whether Mothershed knew the crimes charged were being, or were about to be, committed and intentionally encouraged or aided the commission of either crime before it was completed.

We cannot conclude that the prior conviction is relevant to any of these issues. There is only one sense in which we regard that conviction as relevant: it is reasonable to conclude that a person who has been convicted of possessing money that he knows was stolen from a bank is more likely to be a bank robber than are most other people who have no such record. But this is simply an observation about a person's character, and, as such, is precisely the kind of evidence that Rule 404(b) is designed to exclude. We do not convict people of crimes simply because of their propensities; we do so because of what they have actually done.

The District Court here ruled that the conviction was relevant to the issue of intent. We disagree. There were two material issues relating to intent—whether Mothershed intended that the bank be robbed and whether, before the robbery was completed, he intended to aid or en-

courage its commission. The prior conviction showed he had knowingly possessed stolen bank money some ten years earlier. It does not show that Mothershed intended that that bank be robbed or participated in the earlier robbery in any way at any time before it was completed. (Perhaps he did. But this is mere conjecture; the prior conviction sheds no light on these matters.) Nor, unless we take the conviction as evidence of a propensity to rob banks, does it make it any more probable that Mothershed intended that this bank be robbed or intended, before the crime was completed, to help Johnson rob it.

The irrelevance of this evidence to show intent may be more obvious when contrasted with other cases where prior bad acts were relevant on that issue. In *United States v. Burkett*, 821 F.2d 1306 (8th Cir. 1987), the prior bad acts were four thefts from safes after break-ins. The defendant had confessed to two of the thefts, apparently admitting he intended to steal when he broke into the buildings, and he had implicated himself in another. The evidence was introduced to show his intent to steal in the crime charged, which involved a similar break-in and theft in one of the very buildings he had previously burglarized. The fact that he had confessed to burglary (illegal entry plus felonious intent) in two of the earlier cases and had implicated himself in a third made it more likely that he intended to steal when he broke into this building in a similar fashion. See *id.* at 1309. In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the defendant, a postman, was charged with stealing money from the mails. The money had been found in his possession after he had finished his route, and he claimed at trial that he intended to turn the money over to the Postal Service, having found it loose while delivering mail. The government rebutted this by introducing evidence that several months before his arrest the defendant had taken two credit cards out of the mail and had them in his possession when arrested, which tended to show he intended to keep them permanently. This was put on to show that, just as he intended to keep the credit cards, he intended to keep the money.

The prior bad acts in both of those cases tended to demonstrate the presence of the requisite intent in the crimes charged. But in this case the prior conviction for knowingly possessing stolen bank funds has no relevance—other than as proof of propensity—to the intent to rob the bank or the intent to help Johnson rob it. And if the evidence were relevant to intent, its relevance would be so slight, when compared with the devastatingly prejudicial impact of such evidence in the mind of a jury, that to admit it would be an abuse of discretion under Rule 403, especially in view of the great age of the conviction.

Similarly, we hold that the conviction was not relevant to motive, because it sheds no light on why Mothershed would have wanted to rob the bank (the government's theory at trial was that drugs supplied the motive). Nor was the simple fact of the conviction relevant to identity, because there was nothing to show a unique *modus operandi* in the prior crime that was also present in this case and tended to point to Mothershed as the perpetrator. *Cf. United States v. Engleman*, 648 F.2d 473 (8th Cir.1981). Nor did the evidence tend to show a plan, unless on the pure speculation that a similar plan underlay the earlier conviction. Nor was it relevant to Mothershed's knowledge; it did not tend to show Mothershed knew of this bank robbery, and, though it might have been relevant on whether he knew Johnson gave him stolen bank money later that day, that issue was not material to this case. Finally, we think it evident that the prior conviction did not tend to show preparation or opportunity for the crime charged.

■ Therefore the admission of this evidence was error. But it remains to consider whether it was prejudicial and requires a new trial. (The government does not make a harmless-error argument, but we do not want to reverse the District Court for non-prejudicial error in admitting evidence. See Fed.R.Evid. 103(a).) There are two arguments in this case for holding the er-

ror harmless. First, during cross-examination of Mothershed at trial, the government introduced a certified copy of his conviction under Fed.R.Evid. 609 for impeachment purposes. Second, as we noted earlier, the District Court gave a limiting instruction to the jury at the time it heard Grove testify to the prior conviction, and it included a substantially similar caution in the jury instructions (except that the jury instruction permitted the jury to consider the conviction as proof of preparation and knowledge, in addition to intent, motive, plan, and opportunity).

Several reasons persuade us that the Rule 404(b) error was prejudicial. Assuming that the certified copy of the conviction was properly admitted under Rule 609,[3] we cannot hold that the certified copy of the conviction conveyed to the jury through proper means the same information that Grove's testimony conveyed through improper means. The certified copy shows only that Mothershed pleaded guilty to a violation of 18 U.S.C. § 2113(c). It says nothing about a bank robbery or about knowingly possessing stolen bank funds. The prosecutor asked what the nature of the conviction was, and Mothershed answered, "My understanding of the plea of guilty was to a possession of stolen currency charge in excess of 100 dollars." Tr. 334. Again, this reveals nothing about a bank robbery or possession of stolen bank money. The only indication to the jury that this Rule 609 evidence was in any way connected to a bank robbery was the fact that the conviction recited a violation of 18 U.S.C. § 2113(c), and the jury, in Instruc-

tion No. 5 in this case, was informed that bank robbery is a violation of 18 U.S.C. § 2113(a). Only if the jury had compared the two code citations could it have surmised that the prior conviction concerned a bank robbery (and this assumes it would reason that similar crimes are codified as subsections of the same statute). We cannot know whether the jury made this connection, and even if it had, it would have been misled, for a violation of § 2113(c) need not arise from a robbery; it could stem from a burglary or embezzlement involving a bank. So we do not think that the properly admitted Rule 609 evidence was as prejudicial as the improper Rule 404(b) evidence.

In addition, agent Groves described the prior conviction as "possession of stolen bank robbery money." Tr. 229. This was incorrect. The guilty plea was to a violation of 18 U.S.C. § 2113(c), which prohibits possession of stolen bank money. As Mothershed's lawyer pointed out at trial, not all stolen money comes from robberies. So the Rule 404(b) evidence of the prior conviction was used to depict Mothershed as having been involved in a bank robbery before, even though the conviction itself does not support this. Only if evidence extrinsic to the conviction had been introduced (and none was), could it have been shown that, as the government represented, a robbery underlay the conviction.

Finally, we do not think the Court's limiting instructions served to dispel the prejudice from the Rule 404(b) evidence. In a case in which such evidence is relevant, a

---

**3.** We are not convinced that it was properly admitted. The judgment shows that Mothershed was sentenced under the federal Youthful Offenders Act, 18 U.S.C. §§ 5005–24 (1982), which has since been repealed. Rule 609(d) forbids introduction of evidence of juvenile adjudications to impeach a criminal defendant. The Fifth Circuit has held, in a case where a criminal defendant sought to impeach the government's principal witness by introducing a conviction for which the witness was sentenced under the Act, that such convictions are not "juvenile adjudications" under Rule 609(d), and they may therefore be introduced for impeachment purposes. *United States v. Ashley,* 569 F.2d 975 (5th Cir.), *cert. denied,* 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978). But the rea-

soning in that case was very cursory; the Court simply quoted *dicta* from another circuit, *United States v. Canniff,* 521 F.2d 565, 569 n. 2 (2d Cir.1975), *cert. denied,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976), which in turn had, without discussion, adopted the reasoning of an opinion, dating from before the adoption of the Federal Rules of Evidence, which construed a somewhat dissimilar provision of the District of Columbia statutes. *Luck v. United States,* 348 F.2d 763 (D.C.Cir.1965). This Court has not ruled on the issue, and we consider it still open. Compare Fed.R.Evid. 609(d) and (c) with 18 U.S.C. § 5021 (1982) (repealed). We need not resolve the issue here, for we assume the impeachment was appropriate and rule on other grounds.

limiting instruction reduces the prejudicial effect of the evidence because it tells the jury to consider the bad act only for purposes of the issue to which it is relevant. Ordinarily, this reduces the likelihood that the jury will consider the evidence for improper purposes. But in this case, the prior conviction was not relevant to any material issue. Thus the Court's limiting instructions had the effect not of preventing the jury from using the evidence for improper purposes, but of directing the jury to consider the evidence for improper purposes, up to six different ones. We are therefore constrained to hold that the limiting instructions in this case did not dispel the prejudice to Mothershed.

### III.

■■■ Our conclusion that a new trial is required makes it unnecessary to discuss in detail Mothershed's other claims of error. Only one, his contention that the evidence was insufficient to support the jury's guilty verdict, would require entry of a judgment of acquittal in his favor. We reject that claim. The evidence was sufficient for a reasonable jury to find Mothershed guilty. The other two points of error, the refusal of his instruction on accomplice testimony and the alleged ineffectiveness of his trial lawyer, would, in the event Mothershed prevailed on either, entitle him only to a new trial, which he has obtained anyway. But we think a ruling on the merits is in order on the refusal of the accomplice instruction, since the same situation is likely to arise on retrial. As we noted in our discussion of the facts, there was some corroboration of Johnson's testimony at trial. Thus it was not error to refuse Mothershed's requested instruction that the jury regard the accomplice's testimony "with caution and ... great care." See *United States v. McGinnis*, 783 F.2d 755 (8th Cir. 1986).

The judgment is reversed, and the cause is remanded for a new trial.

ROSS, Senior Circuit Judge, dissenting.

I respectfully dissent with respect to the majority's conclusion that the district court committed reversible error by admitting testimony of Mothershed's prior conviction into evidence.

This court has repeatedly held that the trial court has broad discretion to admit relevant evidence of other criminal and bad acts and "reversal is only commanded when 'it is *clear* that the questioned evidence has *no* bearing upon any of the issues included.'" *United States v. Marshall*, 683 F.2d 1212, 1215 (8th Cir.1982), *citing United States v. Conley*, 523 F.2d 650, 654 (8th Cir.1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976) (emphasis added). *Accord United States v. O'Connell*, 841 F.2d 1408, 1422 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988); *United States v. Estabrook*, 774 F.2d 284, 287 (8th Cir.1985). In my opinion it is less than clear that the evidence of Mothershed's prior conviction for possession of stolen bank money has *no* bearing upon the issues of intent and plan. Such evidence, in my view, was relevant to the material issue of Mothershed's intent and plan to acquire or possess stolen bank money by means of aiding and abetting Johnson's robbery of the bank.

I also disagree with the majority's conclusion that the testimony evidence of Mothershed's prior conviction was "devastatingly prejudicial." The district court read a cautionary statement to the jury immediately prior to presentation of the prior conviction testimony, which clearly stated: "You may not use this evidence to decide whether the defendant carried out the physical acts involved in the crime charged here." A similar limiting instruction was also given to the jury before their deliberations. These admonitions were sufficient to reduce the likelihood that the jury would consider the evidence for improper purposes.

For these reasons, I dissent from the majority opinion.