# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3141

_____

United States of America

*Plaintiff - Appellee*

v.

Torrance L. Cotton

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 23, 2015
Filed: May 19, 2016

_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Torrance Cotton appeals his convictions for conspiracy to distribute and possession with intent to distribute cocaine. After careful review of the issues raised, we find no reversible error and affirm the judgment of the district court.[1]

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

## I. Background

In 2012, the Drug Enforcement Administration (DEA) began an investigation into the suspected drug trafficking activities of Jeremy Poe. After Poe was arrested in January 2013 in possession of a kilogram of cocaine, he agreed to cooperate with the DEA and assist them in their investigation. At a meeting with the DEA on January 14, 2013, Poe told the DEA that he had received the kilogram of cocaine from David Frazier, and that he believed that Frazier had gotten the cocaine from Torrance Cotton. Following that meeting, Poe agreed to meet with Frazier and arrange further drug transactions while wearing a wire. Poe had two separate meetings with Frazier on January 17, first at Chilimacks, a courier service where Frazier and Cotton worked, and second at Frazier's residence. Poe met again with Frazier on January 18. Following that meeting, the DEA arrested Frazier and seized one kilogram of cocaine from a safe in his residence.

As a result of this investigation, Torrance Cotton was indicted on May 1, 2013, and charged with one count of conspiracy to distribute cocaine and one count of possession with intent to distribute cocaine. Cotton was convicted of both counts following a jury trial on April 3, 2014. On appeal, Cotton contests the admission of evidence of his prior convictions, admission of a statement made by David Frazier after his arrest, and denial of his motion for a new trial based on a Brady violation.

## II. Discussion

### A. Admission of Evidence of Prior Convictions

Cotton asserts that the district court improperly allowed the government to introduce evidence of his prior convictions for possession of cocaine with intent to distribute and attempted drug trafficking. Because Cotton did not make a contemporaneous objection to the introduction of this evidence, our review is for

plain error unless the district court made a final and definitive pretrial ruling on the admissibility of this evidence. United States v. Young, 753 F.3d 757, 775 (8th Cir. 2014). The admissibility of the evidence was addressed at two pretrial conferences, on November 26, 2013, and January 23, 2014. At both pretrial conferences, the district court made a provisional, non-definitive ruling that the evidence was admissible, specifically anticipating a contemporaneous objection at trial. However, before voir dire began on March 31, 2014, the district court again addressed the admissibility of the evidence of Cotton's prior convictions, stating "I do think that there is still a basis to introduce this 404(b) evidence. . . . So the objection will be overruled. I will, as I say, before that evidence is sought to be introduced, want to see a limiting instruction." This March 31 ruling was, by its terms, final, definitive, and non-provisional. Cf. id. ("when the district court *reserves its ruling or otherwise indicates that the ruling is provisional*, then the proponent should reintroduce the court to the issue at the appropriate time") (emphasis added). The court stated that the objection "will be overruled," and referred to an anticipated limiting instruction with regard to the evidence that would be admitted. At this point, the court's ruling on the admissibility of the evidence was clear, and counsel would no longer have had any reason to doubt whether that ruling was definitive. See id.; Fed. R. Evid. 103(b) & advisory committee's note to 2000 amendment. We therefore conclude that Cotton properly preserved this claim of error, and accordingly review the district court's decision to admit the evidence of Cotton's prior convictions for abuse of discretion. Young, 753 F.3d at 767.

Evidence of a defendant's prior convictions is categorically inadmissible to prove the defendant's criminal propensity. Fed. R. Evid. 404(b)(1). Evidence of prior convictions may, however, be admissible to prove a specific element or aspect of the charged offense, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Where there is a proper purpose for evidence of a prior conviction, the conviction may be admitted if it is "(1) relevant to a material issue; (2) similar in kind

-3-

and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." United States v. Trogdon, 575 F.3d 762, 766 (8th Cir. 2009) (quoting United States v. Williams, 534 F.3d 980, 984 (8th Cir. 2008)). This is considered a rule of inclusion, meaning that if these elements of admissibility are satisfied, the evidence will be excluded only when it is offered solely to prove criminal propensity. United States v. Foster, 344 F.3d 799, 801 (8th Cir. 2003).

Federal Rule of Evidence 404(b)(2) identifies the purposes for which evidence of prior convictions may be admitted, but merely reciting those permissible purposes without more is not sufficient to render evidence of a prior conviction admissible in any particular case. Rather, when the defendant raises a timely objection to admission of the evidence, Rule 404(b) requires a careful inquiry and analysis of the purpose for which the evidence is offered. The government—as proponent of the evidence—must identify the permissible non-propensity purpose for the evidence, and must articulate the relationship between the prior conviction and a material issue in the case. If the district court, upon consideration of the facts of the case, the elements of proof required, and the circumstances of the prior conviction, concludes that a permissible non-propensity purpose exists for the evidence, the court must then consider whether the other requirements for admissibility are satisfied. See United States v. Armstrong, 782 F.3d 1028, 1034 (8th Cir. 2015) (holding that even if introduced for a proper purpose, to be admissible, prior bad act evidence must be relevant, supported by sufficient evidence, similar in kind and close in time to the crime charged, and higher in probative value than prejudicial effect). If, however, the court concludes that the only purpose for the evidence is to show the defendant's criminal propensity, Rule 404(b)(1) prohibits its admission.

Here, there is reason to be concerned that the evidence was not properly admitted under Rule 404(b). Following Cotton's pretrial objection to the evidence, the government generally asserted that Cotton's prior convictions were admissible to

prove "knowledge, intent, and motive."[2] The district court made a similarly general preliminary ruling, stating that the convictions were relevant to prove "lack of mistake, knowledge, identity, those issues for which 404(b) evidence is used." Thus, though both the government and the district court correctly recited some of the purposes for which evidence of prior convictions *may* be used, the court did not analyze the purpose for which the evidence was being offered in this case. Mere recitation of the Rule without an accompanying case-specific analysis risks couching criminal propensity in terms of knowledge, intent, or lack of mistake. Rule 404(b), by its own terms, requires more.

Nevertheless, under the particular circumstances of this case, any error in admitting the evidence of Cotton's prior convictions was harmless. An evidentiary error is harmless if it did not substantially influence the jury's verdict. United States v. Aldridge, 664 F.3d 705, 714 (8th Cir. 2011). Error may be harmless where "the government introduced ample competent evidence from which the jury could conclude beyond a reasonable doubt that the defendant was guilty even without the evidence that should have been excluded." Id. (quoting United States v. Falls, 117 F.3d 1075, 1077 (8th Cir. 1997)). Here, the evidence against Cotton included: the

---

[2]On appeal, the government also asserts that evidence of the convictions was admissible to prove lack of mistake or accident. This argument is based on Cotton's assertion at trial that his fingerprints appeared on a plastic shopping bag wrapped around the cocaine by happenstance. However, Cotton's argument was not that he had accidentally touched the bag wrapping the cocaine, but that he had touched the bag in the ordinary course of business at his workplace before the bag was involved in the drug packaging. The government's argument that the prior convictions are relevant as to mistake or accident therefore ultimately amounts to an argument that a person with prior drug convictions must have been involved with a drug transaction when he touched the plastic bag, which is, of course, a non-permissible propensity-based use of the evidence. We further note that the government did not raise this argument to the district court before trial in support of the admissibility of the evidence; rather, the argument of lack of mistake or accident arose only in closing argument.

testimony of Jeremy Poe, including David Frazier's statements to Poe that Cotton was his cocaine supplier; recorded conversations from January 17, 2013, in which Frazier referred to "T" and "Torrance"; testimony from the DEA agents that Cotton arrived at Chilimacks on January 18, 2013, with a package under his arm; and Cotton's fingerprints on the outside wrapping of the cocaine found in Frazier's safe. This evidence, if given credence by the jury, is "sufficiently strong for us to conclude that the conviction[s], even if improperly admitted, did not have 'a substantial influence on the jury's verdict.'" United States v. Donnell, 596 F.3d 913, 921 (8th Cir. 2010) (quoting United States v. Lupino, 301 F.3d 642, 645 (8th Cir. 2002)). Furthermore, the district court gave an appropriate limiting instruction stating that the evidence of Cotton's prior convictions "[was] not evidence that he committed such acts in this case," and could only be used "to help [] decide knowledge, intent, and absence of mistake or accident." The presence of a limiting instruction "diminishes the danger of any unfair prejudice arising from the admission of other acts." Aldridge, 664 F.3d at 715 (quoting United States v. Strong, 415 F.3d 902, 906 (8th Cir. 2005)).

We do not underestimate the impact evidence of a prior conviction can have on a jury's assessment of a criminal case. The Federal Rules of Evidence limit the use of evidence of prior convictions for good reason. Fed. R. Evid. 404(b), 403. But here, given the testimony and physical evidence directly linking Cotton to the distribution of cocaine, Cotton is unable to show that introduction of the evidence of prior convictions had a substantial influence on the jury's verdict. Aldridge, 664 F.3d at 714. Accordingly, any error associated with the admission of the evidence is not grounds for reversal.

B. Introduction of David Frazier's Post-Arrest Statement

At Cotton's trial, co-conspirator David Frazier did not testify but Jeremy Poe did. The government presented Frazier's co-conspirator statements through Poe's testimony. Cotton sought to impeach Frazier by introducing a portion of an affidavit

written and attested by Frazier in July 2013, months after Frazier's arrest. The impeachment evidence was initially limited to the following statement in Frazier's affidavit: "I never had any drug involvement with Mr. Cotton at all . . . ." The government then attempted to rehabilitate Frazier by calling the police officer who interviewed Frazier after he was arrested on January 18, 2013. The officer testified to Frazier's statement following his arrest, which—consistent with Frazier's co-conspirator statements introduced through Poe's testimony—implicated Cotton as Frazier's source of cocaine. On sur-impeachment, Cotton introduced the remainder of Frazier's affidavit, in which Frazier explained that he made the post-arrest statement to police on January 18 only "so [he] could get away from them" and apologized for "involv[ing] Mr. Cotton in this situation at all." The district court allowed the introduction of Frazier's co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E), and allowed the introduction of the subsequent impeachment and rehabilitative evidence pursuant to Federal Rule of Evidence 806. Cotton now asserts that the district court erred in allowing the government to introduce Frazier's post-arrest statement to rehabilitate the credibility of Frazier's co-conspirator statements.

Cotton first argues that admission of Frazier's post-arrest statement violated his rights under the Confrontation Clause. Because the statement was offered for impeachment and not to prove the truth of the matter asserted, there was no Confrontation Clause violation in this case. See United States v. Rodriguez, 484 F.3d 1006, 1013–14 (8th Cir. 2007); United States v. Kehoe, 310 F.3d 579, 591 (8th Cir. 2002).

Cotton next argues that Frazier's statement was inadmissible under the Rules of Evidence. We begin by analyzing the admissibility of each piece of evidence offered in the relevant series. First, David Frazier's co-conspirator statements were undisputedly admissible as non-hearsay co-conspirator statements pursuant to Rules 402 and 801(d)(2)(E). Fed. R. Evid. 402 (in general, relevant evidence is admissible);

Fed. R. Evid. 801(d)(2)(E) (statements made by co-conspirators during and in furtherance of the conspiracy are not hearsay). The parties also agree that the limited portion of Frazier's affidavit ("I never had any drug involvement with Mr. Cotton at all") was properly admitted as impeachment evidence pursuant to Rule 806. Fed. R. Evid. 806 (when a co-conspirator statement is admitted pursuant to Rule 801(d)(2)(E), "the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. . . . The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it"). The propriety of admitting these first two pieces of evidence is not in controversy.

What is at issue is whether Frazier's post-arrest statement was admissible as rehabilitation evidence. Cotton argues that the only Rule of Evidence that could support admission of Frazier's post-arrest statement is Rule 801(d)(1)(B). But the district court did not admit the post-arrest statement under this rule, and neither the government nor Cotton raised the application of this rule to Frazier's post-arrest statement at trial. Rule 801(d)(1)(B), in relevant part, provides that a prior statement[3]

---

[3]The parties spend a substantial amount of time disputing whether the fact that Frazier's post-arrest statement did not actually predate the statements presented as substantive evidence at trial affects the admissibility of the statement. However, the requirement that the prior consistent statement predate the alleged motive to fabricate is a protection premised at least in part on the assumption that the prior consistent statement may be admitted as substantive evidence. Tome v. United States, 513 U.S. 150, 157–58 (1995). Moreover, the Advisory Committee Notes to Rule 806 recognize the paradox created when a declarant is subject to impeachment by use of an inconsistent statement, noting that in cases where the declarant is not a live witness, "the inconsistent statement may well be a *subsequent* one." Fed. R. Evid. 806 advisory committee's note to 1972 proposed rules. In that circumstance, "[t]he writers favor allowing the subsequent statement." However, the note only directly addresses the use of prior *inconsistent* statements.

consistent with a declarant's testimony *is not hearsay* if the statement is offered to rebut an accusation that the declarant fabricated his testimony[4] or acted under an improper influence in testifying. Frazier's post-arrest statement was not offered as non-hearsay substantive evidence. Rather, the government offered it solely to rehabilitate Frazier after his testimony had been impeached by the introduction of an inconsistent statement, and the jury received a limiting instruction to that effect. On its face, therefore, Rule 801(d)(1)(B) does not apply to Frazier's post-arrest statement.

Instead, the district court admitted the post-arrest statements "under Rule 806 for the limited purpose of supporting the credibility of the declarant [Frazier], whose credibility has been attacked by the defendant." Pursuant to Rule 806, Frazier's credibility was "attacked, and [could] then [be] supported, by any evidence that would be admissible for those purposes if [he] had testified as a witness." Fed. R. Evid. 806.[5]

---

[4]The parties also make much of Frazier's motive to fabricate, each arguing that Frazier had a motive to fabricate different statements for different reasons. However, the parties did not make these arguments at trial, and the district court therefore had no opportunity to make a finding as to whether there was in fact "an express or implied charge" of recent fabrication. Fed. R. Evid. 801(d)(1)(B)(i); see United States v. Hoover, 543 F.3d 448, 453 (8th Cir. 2008). That the parties cannot agree on what motive to fabricate is in dispute highlights the importance of raising these issues to the district court, rather than waiting to do so on appeal.

[5]Cotton argues that the post-arrest statement is inadmissible under Rule 801(d)(1)(B), but he offers no other argument for why it is inadmissible as rehabilitative evidence pursuant to Rule 806. Despite the lack of clarity in his argument, the nature of his challenge to the admissibility of the rehabilitative evidence is essentially clear, and we therefore consider whether the evidence was properly admitted under the applicable rule.

Use of a prior consistent statement to rehabilitate the credibility of a witness who has been impeached by a prior inconsistent statement is appropriate when the statement contextualizes, clarifies, or amplifies the meaning of the witness's testimony or inconsistent statement. See Hoover, 543 F.3d at 453; United States v. Kenyon, 397 F.3d 1071, 1081 (8th Cir. 2005). For example, a prior consistent statement may be admissible to explain to the jury why a seemingly inconsistent prior statement elicited on cross-examination was not in fact inconsistent at all. See Hoover, 543 F.3d at 454. However, "it is not proper to admit 'all prior consistent statements simply to bolster the credibility of a witness who has been impeached by particulars.'" United States v. Ramos-Caraballo, 375 F.3d 797, 803 (8th Cir. 2004) (quoting United States v. Simonelli, 237 F.3d 19, 28 (1st Cir. 2001)). In other words, prior consistent statements are not admissible as rehabilitative evidence to the extent that they are merely cumulative of the testimony already presented; but they may be admissible to the extent that they explain either the testimony or the impeaching inconsistent statement, and therefore allow the jury to better assess the substantive evidence presented.

Whether a witness may be properly rehabilitated by the introduction of a prior consistent statement is a fact-based inquiry, and the decision to admit or exclude such evidence is left to the sound discretion of the district court. Kenyon, 397 F.3d at 1081. The government did not assert that Frazier's affidavit (the impeaching inconsistent statement) or co-conspirator testimony was misunderstood or taken out of context, such that a prior consistent statement might have explained or clarified either for the benefit of the jury. Yet, for reasons particular to this case, it would be difficult to conclude that the district court abused its discretion in admitting the post-arrest statement. The primary reason is that on sur-impeachment, Cotton was permitted to introduce the entirety of Frazier's affidavit, which included both the impeaching inconsistent statement and an explanation of why he had not been truthful in his post-arrest statement. The jury therefore had before it 1) Frazier's substantive

testimony, introduced as co-conspirator statements through Poe; 2) the impeaching inconsistent statement in Frazier's affidavit; 3) Frazier's January 18 statement to police, which was consistent with the substantive testimony; and 4) Frazier's explanation of his January 18 statement, contained in the balance of his affidavit. Though this is an unusual pattern for the introduction of such evidence, the basic outcome was that the jury was able to consider the substantive evidence, as well as the context of prior consistent and inconsistent statements that bore on the truth of that evidence. The district court gave a limiting instruction—to which neither party objected—before the evidence was admitted, instructing the jury on the limited purposes for which it could consider the evidence. Moreover, when the government was presenting the post-arrest statement via the testimony of the arresting agent, the district court sua sponte raised the concern that certain questions went beyond the proper scope of the testimony, and sustained Cotton's objection on that ground. The district court's careful attention to the admission of the rehabilitation evidence presented supports the conclusion that the court did not abuse its discretion in admitting all of the proffered evidence for both parties regarding the credibility of Frazier's co-conspirator statements.

We also note that Cotton was permitted to introduce all the evidence he sought to introduce on this issue. Only because the post-arrest statement was admitted was Cotton allowed to introduce Frazier's full affidavit, which ostensibly exculpated Cotton of any drug-related involvement with Frazier. Furthermore, Frazier's post-arrest statement was not substantively different or significantly more harmful than the statements originally admitted through Poe's testimony as co-conspirator statements, making it unlikely that the statement had any prejudicial effect. Cf. Kenyon, 397 F.3d at 1082. Under these somewhat complex and unusual circumstances, the district court did not abuse its discretion in allowing the post-arrest statement to be admitted.

-11-

## C. <u>Brady</u> Evidence

After Jeremy Poe was arrested on January 14, 2013, he identified Cotton in a photograph shown to him by DEA agents. At trial, the government introduced a photograph of Cotton into evidence as Government's Exhibit 1. Several government witnesses, including Poe, were shown Exhibit 1 and identified it as the photograph that had been shown to Poe in order to identify Cotton in January 2013. However, the photograph shown at trial (Exhibit 1) had been taken on November 1, 2013. Cotton asserts that the government suppressed the earlier photograph—the one actually shown to Poe in January 2013—in violation of his <u>Brady</u> rights.

A <u>Brady</u> violation occurs when the government suppresses evidence that is favorable to a defendant and is material as to either guilt or punishment. <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). For evidence to be material as to guilt, there must be a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. <u>Youngblood v. West Virginia</u>, 547 U.S. 867, 870 (2006) (per curiam). Here, the district court concluded that there was no <u>Brady</u> violation because

> the evidence was not material. Poe's identification of Defendant Cotton was not central to the evidence in this case . . . . Moreover, the case agents and Poe were fully cross-examined and impeached at trial on the issue of Government Exhibit 1. At most, this evidence would be cumulative impeachment evidence.

We agree with the district court. There is no reasonable probability that the result of the proceeding would have been different had the earlier photograph been disclosed to Cotton. Accordingly, there was no <u>Brady</u> violation associated with the government's failure to disclose the photograph, and the district court did not abuse its discretion in denying Cotton's motion for a new trial.

III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in all but Parts II.A and III of the court's opinion. In my view, the district court did not abuse its discretion in admitting evidence of Torrance Cotton's prior convictions, and I do not join the court's *dicta* concerning the application of Federal Rule of Evidence 404(b).

Rule 404(b) provides that evidence of a crime, such as a prior conviction, may be admissible for several enumerated purposes. Cotton had sustained prior convictions for possession with intent to distribute cocaine and attempted trafficking in drugs. The district court ruled that these prior convictions were admissible to prove "knowledge, intent, and absence of mistake or accident." These are among the purposes enumerated in the rule. The district court explained that Rule 404(b) "is a rule of inclusion," that there was "sufficient temporal proximity" to admit the prior convictions, that the prior convictions were "particularly relevant, because the drug involved is cocaine," and that the court would give "a limiting instruction to the jury to try to limit any prejudice that there might be, because it is important to balance the probative value with the prejudice." R. Doc. 713, at 24-25.

In this case, Cotton was charged with conspiracy to distribute cocaine and possession with intent to distribute cocaine. The conspiracy charge required proof that Cotton voluntarily and intentionally joined an agreement, and that he knew the purpose of the agreement. On the substantive count, the government was required to prove that Cotton knew that what he possessed was cocaine, as opposed to some other

-13-

substance, and that he intended to distribute the cocaine, rather than use it, store it, or otherwise dispose of it. Cotton's prior convictions were relevant on the issues of knowledge or intent. It was more probable with the evidence of prior convictions than without it, for example, that Cotton knew the substance he possessed was cocaine and that he intended to distribute it. *See United States v. Crowder*, 141 F.3d 1202, 1209 (D.C. Cir. 1998) (en banc). The evidence of prior convictions likewise made it more probable that Cotton knew that he joined a conspiracy to distribute cocaine and did not participate unwittingly. *United States v. Robinson*, 809 F.3d 991, 997-98 (8th Cir. 2016); *United States v. Brown*, 956 F.2d 782, 787 (8th Cir. 1992).

In a drug trafficking prosecution, evidence of a prior drug conviction is nearly always relevant to show a defendant's knowledge or intent in committing the charged offense. *See, e.g.*, *United States v. Armstrong*, 782 F.3d 1028, 1034 (8th Cir. 2015); *United States v. Horton*, 756 F.3d 569, 579-80 (8th Cir. 2014); *United States v. Gipson*, 446 F.3d 828, 831 (8th Cir. 2006); *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002); *United States v. Williams*, 895 F.2d 1202, 1205 (8th Cir. 1990). Admission of prior convictions to prove absence of mistake in a drug case is perhaps less common, but it is also supported by circuit precedent. *United States v. Ellis*, No. 15-2243, 2016 WL 1077131, at *7 (8th Cir. Mar. 18, 2016) ("Ellis's prior conviction was for delivering heroin—the very drug he was charged with distributing in this case, which made the prior conviction particularly relevant to knowledge, intent, and absence of mistake."); *United States v. McGilberry*, 620 F.3d 880, 886-87 (8th Cir. 2010); *United States v. Shoffner*, 71 F.3d 1429, 1432 (8th Cir. 1995) ("Shoffner's prior involvement in marijuana dealing also tends to prove motive, knowledge, and absence of mistake to rebut Shoffner's claim that he was merely present and unaware of the conspiracy."). The district court here gave a cautionary instruction to the jury, explaining the limited purposes for which the evidence of prior convictions was received. This instruction "diminishe[d] the danger of any unfair prejudice arising from the admission of other acts." *United States v. Franklin*, 250 F.3d 653, 659 (8th

Cir. 2001). The district court did not abuse its discretion in concluding that the probative value was not substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403; *Ellis*, 2016 WL 1077131, at \*7; *United States v. Halk*, 634 F.3d 482, 488 (8th Cir. 2011).

The court does not conclude that there was error, but sees a "reason to be concerned," because "Rule 404(b), by its own terms, requires more" explanation for admissibility than what the government and the district court provided. *Ante*, at 4-5. Not so. The terms of the rule speak only to the purposes for which evidence is admissible; they do not address what the prosecution or the district court must specify on the record. Our decisions encourage the government and the district court to articulate a theory of admissibility to facilitate appellate review, but even where the government simply reads a list of issues for which prior bad acts can be admitted under Rule 404(b), that "is not in itself a basis for reversal." *United States v. Mothershed*, 859 F.2d 585, 589 (8th Cir. 1988). The reviewing court must examine the material issues from the trial and determine whether the evidence of prior convictions was relevant for the purposes specified. *Id.*

The evidence at issue here was clearly relevant to the limited issues on which it was admitted—knowledge, intent, and absence of mistake. We have said before in the context of Rule 404(b) that "[j]udges need not explain the obvious, even briefly." *United States v. Burk*, 912 F.2d 225, 229 (8th Cir. 1990) (internal quotation marks omitted). As in *Burk*, "the prosecution made clear enough the purpose for which it wished to elicit the evidence," and "further explanation from the court was unnecessary." *Id.* Likewise, "the factors upon which the probative value/prejudice evaluation were made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the district court's ruling." *Id.* (internal quotation marks omitted).

The evidence of Cotton's prior convictions was properly admitted.  The district court may have erred by not sustaining Cotton's objection to the government's closing argument that the prior convictions tended to prove the absence of a "cosmic accident," because the argument did not address a true "accident," *see ante*, at 5 n.2, but I agree with the court that any error in that respect was harmless.

For these reasons, I concur in the judgment.

_____