**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 16-4732**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

MICHAEL LAWRENCE MAYNES, JR., a/k/a Kamile Jones, a/k/a Mac Mill, a/k/a Horseblock, Jr.,

       Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:15-cr-00336-LO-1)

Argued: December 7, 2017                      Decided: January 18, 2018

Before WILKINSON, SHEDD, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Shedd and Judge Diaz joined.

**ARGUED:** Mark Bodner, Fairfax, Virginia, for Appellant. Michael John Frank, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, United States Attorney, Patricia T. Giles, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Michael Maynes raises various assignments of error arising from his trial and convictions for four counts of sex trafficking by use of force, fraud, or coercion in violation of 18 U.S.C. § 1591(a) and one count of conspiracy to commit sex trafficking in violation of 18 U.S.C. §§ 1591(a) and 1594(c). For the reasons that follow, we affirm the convictions.

I.

Michael Maynes was a pimp. He worked with several others in running his prostitution business, including his girlfriend and two male relatives. His sex trafficking convictions relate to four women whom he prostituted.

The first woman gave her child to Maynes's girlfriend to care for while she engaged in commercial sex work, and has not seen her child since. When she asked to see her son, she was told that Maynes would decide when she could take time off from prostitution to see her child. She later received a text threatening that her son would be taken to Child Protective Services if she did not send more money to Maynes's girlfriend.

The second woman initially met Maynes in Houston, where he told her that he worked in construction and expressed romantic interest in her. Maynes suggested moving together to Virginia to be closer to his family, and she agreed. Once there, she was surprised to learn that Maynes wanted to prostitute her. He then refused to let her return home from the motel where she worked, and thus refused to allow her to see her infant daughter, unless she met her $1,500 daily earnings quota. While she opened a savings

2

account to hide some of her earnings from Maynes, he later learned of the account and required her to give him nearly all of the funds.

The third woman was convinced by Maynes to perform commercial sex work when he told her that she would receive a home as well as 50 percent of her prostitution proceeds. She believed this income and a stable home would help her regain custody of her children. Maynes did not provide her with a home, and did not allow her to keep 50 percent of the prostitution proceeds. He did, however, provide her with cocaine, which she was addicted to.

The fourth woman was performing commercial sex work in Orlando, Florida, when Maynes contacted her through an internet site advertising her services. Maynes invited her to come to Virginia to work as an escort, and promised to help her obtain a home and a car and provide her a share of the prostitution earnings. Maynes did not follow through on these promises after she arrived in Virginia and began working for him.

In November 2015, Maynes was indicted for conspiracy to commit sex trafficking in violation of 18 U.S.C. §§ 1591(a) and 1594(c), five counts of sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a), and one count of kidnapping / aiding and abetting kidnapping in violation of 18 U.S.C. §§ 1201(a)(1), (d), and (2). After a trial, the district court acquitted Maynes as to one count of sex trafficking, and the jury returned a not guilty verdict on the kidnapping charge. The jury convicted Maynes of conspiracy to commit sex trafficking and four counts of sex trafficking. Maynes was sentenced to concurrent sentences of 420 months on each count, a special assessment of

$100 on each count, and 5 years of supervised release. The district court also imposed an order of restitution for the victims in the amount of $405,400.

Maynes appeals all of his convictions. He asserts that the district court erred in its jury instructions and erred in entering a judgment of conviction, because there was insufficient evidence. He also asserts that he should receive a new trial because the district court abused its discretion in excluding certain evidence.[1] As explained below, we are not persuaded by any of these arguments, and we affirm his convictions.

## II.

Maynes first contends that the district court's instruction defining force, fraud, and coercion was insufficient because the district court did not include Maynes's proffered materiality instruction.

The federal sex trafficking statute on which Maynes's convictions rest is violated by anyone who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" knowing "that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). To clarify the meaning of "fraud" in the statute, Maynes sought an instruction informing the jury that fraud is an "act of trickery or deceit

---

[1] Maynes also challenges his trial counsel for ineffective assistance. We do not generally review such claims on direct appeal, *see United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997), and in any event we see nothing in this record to indicate that counsel's performance fell outside "the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

4

especially when involving misrepresentation; such specific act of fraud must have been material to cause a person to engage in a commercial sex act." J.A. 50. The district court rejected this proposed instruction, and instead instructed the jury that fraud is "any act of deception or misrepresentation." J.A. 718–19. Maynes argues that this instruction erroneously allowed the jury to convict him based on even immaterial misrepresentations. He asserts that this is an impermissible broadening of the statute, because the term "fraud" implies an element of materiality.

We agree with Maynes that only material misrepresentations could contribute to a violation of the statute by means of fraud. Indeed, the Government does not dispute this point, and the Supreme Court has acknowledged that "fraud" has long "had a well-settled meaning at common law," and that this meaning "require[s] a misrepresentation or concealment of *material* fact." *Neder v. United States*, 527 U.S. 1, 22 (1999). Nonetheless, we remain unconvinced of both the purported deficiencies of the instruction given and the supposed superiority of Maynes's proffered instruction. The district court's instructions tracked the language of the statute and adequately conveyed the required elements. By contrast, Maynes's instruction is, at best, a misleading statement of the law.

The definition of fraud given to the jury cannot be evaluated in isolation, and must be considered in the context of the surrounding instructions. Shortly before defining fraud, the district court informed the jury that an element of 18 U.S.C. § 1591(a) was "that the defendant [acted] knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause that person to engage in a commercial sex act." J.A. 718. Thus, for any fraud to

5

be relevant to the question of guilt, it must have been fraud that "would be used to cause that person to engage in a commercial sex act." Using the district court's definition of fraud, the complete element thus was that "any act of deception or misrepresentation" would be "used to cause that person to engage in a commercial sex act." By definition, only material misrepresentations could be used to cause a person to engage in such acts. The concept of materiality was therefore contained in the instructions given to the jury.

Any additional meaning that Maynes's proffered instruction would have conveyed would likely have been a misrepresentation of the law. First, his instruction might have led a jury to believe that the fraud must *in fact* have caused a commercial sex act. But there is no such requirement in the statute; the crime is complete when the defendant recruits, entices, harbors, etc., the victim with knowledge that the prohibited means will be used in the future to cause them to engage in commercial sex acts. *See, e.g., United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014); *United States v. Garcia–Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013); *United States v. Brooks*, 610 F.3d 1186, 1197 n.4 (9th Cir. 2010). There is no requirement that a commercial sex act actually occurred, much less that fraud in fact caused the commercial sex act. To the extent Maynes's proffered instruction implied otherwise, it was incorrect. Further, by including causation in the definition of fraud, Maynes's instruction obscures the statute's clear statement that any one of the prohibited means is sufficient for conviction, alone or in any combination. *See* 18 U.S.C. 1591(a).

In the end, Maynes is simply wrong in claiming that the district court's instruction permitted conviction for ordinary prostitution. And in any event, Maynes did not simply

6

facilitate prostitution for women who freely chose that profession. Instead, the evidence showed that he convinced women to work for him through a variety of material misrepresentations, such as false promises to provide the women with homes and incomes. And once the women were working for him, he used a variety of coercive means, such as controlling access to their children, to prevent them from leaving.

Maynes's challenge to the sufficiency of the evidence therefore must also fail. We "may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam). Here, evidence was provided to support each element of each of Maynes's convictions. Although Maynes denied at trial that he made promises to the women, that he withheld children from their mothers, and that he provided the women with drugs, the jury was entitled to disbelieve his testimony in light of the other evidence. We are not empowered to reweigh that evidence or to second guess the jury's credibility determinations.

III.

Maynes next challenges his convictions on the basis of the district court's decision to exclude certain evidence relating to the women's sexual histories. Specifically, the district court limited the extent to which Maynes's attorney could cross-examine the women regarding their sexual histories prior to engaging in commercial sex work for Maynes. Maynes asserts that this evidence was necessary to his defense, because it would have shown that the women were not innocent victims but rather "were aware of the nature and circumstances attendant to the business of prostitution." Maynes Opening Br.

7

23. He thus contends that the district court's ruling violated his rights under the Confrontation Clause of the Sixth Amendment. We are unpersuaded.

District courts are given significant discretion in making evidentiary rulings, and we will reverse such decisions only upon finding an abuse of that discretion. *United States v. Dinkins*, 691 F.3d 358, 382 (4th Cir. 2012). In considering Sixth Amendment challenges, specifically, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). Therefore, "trial judges retain wide latitude . . . to impose reasonable limits on [] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. There is no reason that this wide latitude should be removed in the context of questions regarding witnesses' sexual histories. The district court remains in the best position to strike a balance between the relevance of the information to the defense and the risk of creating a mini-trial into the victims' character.

In this case, the possibility of subjecting the victims to a mini-trial was certainly real. Disputes regarding whether their prior commercial sex work was consensual, how extensive that prior experience was, how their prior experiences compared to their experiences with Maynes, and similar questions could provide fodder for days of tangential testimony. Indeed, allowing such testimony ran the risk that the focus of the trial would shift from Maynes's activity to the victims' past lives. Simply knowing that

8

some of the women had engaged in prior commercial sex work, without greater detail, would have risked prejudicing the jury without actually illuminating the women's susceptibility to Maynes's techniques.

The past sexual history of the victims was thus a poor guide to any assessment of overtures made to victims whose vulnerability to the false blandishments of the defendant was apparent. The testimony was at best of only the most marginal relevance to the core issue in Maynes's trial: not what the victims' sexual history may have been, but whether the defendant in this case employed force, threats of force, fraud, coercion, or any combination of these to cause the women to commit commercial sex acts. For this reason, many courts have found the victims' sexual histories inadmissible in sex trafficking trials. *See, e.g., United States v. Gemma*, 818 F.3d 23, 34 (1st Cir. 2016) (noting that evidence of a victim's prior prostitution in a § 1591(a) case is "either entirely irrelevant or of [] slight probative value in comparison to its prejudicial effect"); *United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015) (rejecting the argument that "a victim's experience in the sex industry, and knowledge of its practices, is . . . relevant to whether she was coerced or whether, on the other hand, she knew precisely what she was getting into and accepted it") (quotation marks and emphasis omitted); *United States v. Roy*, 781 F.3d 416, 420–21 (8th Cir. 2015) ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex."); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) (rejecting the defendant's argument that "having already been a prostitute [the

9

victim] would not have been deceived" by the defendant and finding that "the testimony sought to be elicited . . . would have been irrelevant").

Maynes in fact is complaining of a district court ruling that was more permissive of the testimony he sought to elicit than many courts have been in similar cases. Rather than a blanket exclusion, the district court here carefully weighed the probative value of each specific piece of evidence against the concerns noted in *Van Arsdall*, ultimately excluding only those lines of questioning most likely to lead to fruitless fishing expeditions. For example, one woman testified that she moved from Houston to Virginia with Maynes without realizing he intended to prostitute her, and was unsure what to do when her first client arrived. The district court held that the defense could cross-examine that woman as to her experience as a prostitute in Houston in order to challenge these claims. *See* J.A. 458–60. This differentiation between types of sexual history evidence reflects the district court's careful consideration of the relevant factors. The ultimate balance the district court struck was entirely fair; Maynes has not come close to establishing any abuse of discretion on the part of the trial court.

IV.

Based on the foregoing, the judgment of the district court is

*AFFIRMED*.