# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-2756

———————————————

United States of America

*Plaintiff - Appellee*

v.

Omar Kashaka Taylor

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: October 19, 2021
Filed: August 10, 2022

——————————

Before GRUENDER, ERICKSON, and STRAS, Circuit Judges.

——————————

ERICKSON, Circuit Judge.

Omar Kashaka Taylor was convicted by a jury of sex trafficking a minor, in violation of 18 U.S.C. §§ 1591(a), (b)(2), (c), 1594(a), and 3559(e) (Count One); two counts of sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a), (b)(1), 1594(a), and 3559(e) (Counts Two and Four); and committing a felony offense involving a minor when required to register as a sex offender, in

violation of 18 U.S.C. § 2260A (Count Three). The district court[1] sentenced Taylor to concurrent terms of 280 months' imprisonment on the sex trafficking offenses and a consecutive 120 months for committing a felony involving a minor while a registered sex offender, for a total imprisonment term of 400 months. Taylor raises four claims on appeal: (1) the evidence was insufficient to sustain the sex trafficking convictions; (2) the district court erred when it instructed the jury that a "happy-ending massage" was a commercial sex act; (3) the district court abused its discretion when it admitted prior bad act evidence; and (4) a conviction on Count One—sex trafficking of a minor—violated the double jeopardy clause because it is a lesser included offense of Count Two—sex trafficking by force, fraud, and coercion. We affirm.

## I.    BACKGROUND

Taylor was a regular client of a massage parlor located in St. Paul, Minnesota. After the parlor was shut down for operating without a license, Taylor started his own massage business in a house he leased in northeast Minneapolis. The charged offenses pertain to activities taking place at Taylor's massage business from August 2017 until his arrest in March 2018.

Taylor advertised his massage business on Backpage.com and enlisted numerous women to work for him. One of those women was S.N., who in August 2017 was 17 years old. At trial, S.N. testified that Taylor told her she could make more money if, during the massage, she was naked, wore lingerie, or gave clients "handjobs" or "blowjobs." Taylor posted sexually suggestive advertisements of S.N. on Backpage.com. S.N. testified that Taylor posted the ads, scheduled appointments for S.N., responded to client messages inquiring about the services S.N. would provide, drove S.N. to his house for client appointments, purchased

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

drugs for S.N., and brought S.N. to parties so she could make extra money by stripping. S.N. further testified that most of her massage clients asked for sex acts, which included "handjobs," touching, and digital penetration. Taylor took half of every client payment received by S.N. S.N. further testified that Taylor raped her at least 15 times, twice resulting in hospital visits. S.N. feared that clients and Taylor would get upset if she refused clients' requests for sexual acts. S.N. described Taylor to the jury as "manipulative."

On cross-examination, Taylor elicited testimony from S.N. about her usage of methamphetamine, heroin, and acid, including how the drugs affected her body and impacted her memory. S.N. testified about running away from a treatment center and eventually connecting with Taylor for the purpose of friendship due to their age difference. S.N. testified that she initially thought Taylor was "kind of a funny guy" and "a nice guy." S.N. discussed staying at Taylor's house, acknowledging that she was able to leave the home when she wanted. In addition to drug usage, defense counsel posed several questions directed at S.N.'s credibility. In particular, Taylor questioned S.N. about her lack of reporting a sexual assault to anyone but her grandma and her inability to recall what she said to others during the course of the investigation, including to a nurse during an examination in January 2018 about the number of times Taylor had assaulted her. The jury convicted Taylor on both counts involving sex trafficking of S.N.

Eighteen-year-old A.L. worked for Taylor's massage business in March 2018. A.L. had no prior experience in the massage business. A.L. testified that when she agreed to work for Taylor, she was not told that giving "handjobs" would be part of her work. Taylor made pricing decisions for A.L. and took $40 of each client payment. A.L. testified that Taylor purchased lingerie for her to wear while providing massages to clients. Like S.N., Taylor told A.L. that she could charge more if she gave nude massages. Taylor helped A.L. coordinate her schedule, drove her to work, trained her, and paid her to massage him. Many of A.L.'s clients would try to touch her and would often get upset because they expected a "happy ending."

-3-

When A.L. inquired of Taylor about why the clients believed they could touch her or were expecting more than a traditional massage, Taylor assured her that they were coming to the house for "just a massage."

On one occasion, A.L. declined a client's request to perform a "handjob," which caused the client to ask her why she was working in a place like this because "he's not dumb and neither [is] [she]." The man became "aggressive" and "forceful," took A.L.'s hands and put them on his penis, and pressured A.L. to perform a "handjob," which A.L. then reluctantly did and left. A.L. testified that she would drink alcohol and use drugs while working for Taylor because she, along with other women working for Taylor, did not want to be doing what they were being directed to do while sober. The jury convicted Taylor of sex trafficking A.L.

The district court received, over Taylor's objection, testimony from another woman, R.T., who stayed at Taylor's house for periods of time during 2017 or 2018. The district court determined R.T.'s testimony was admissible as intrinsic evidence and under Federal Rule of Evidence 404(b). R.T. testified that each time she would perform a massage at Taylor's house, regardless of what went on in the room between her and the client, she gave Taylor a $50 "drop fee," meaning $50 was placed in an envelope and left for Taylor. R.T. also testified about the Backpage.com ads posted by Taylor as well as other evidence similar to the testimony provided by S.N. and A.L., including evidence that Taylor arranged R.T.'s massage appointments, took a portion out of every client payment made to R.T., expected R.T. to provide "happy-ending" massages, provided R.T. drugs and alcohol, and raped R.T. R.T. further testified that she had sexual relations with Taylor around 25 or 30 times and resisted only the last time when she was drunk and drugged.

Prior to the commencement of trial, Taylor moved to preclude the government from introducing his 2005 conviction for sexual assault of a minor during the government's case-in-chief, asserting the conviction was potentially admissible only if Taylor testified. The government countered that even if pursuant to Old Chief v.

United States, 519 U.S. 172 (1997), Taylor stipulated that he had a prior conviction requiring him to register as a sex offender (an element of Count Three), the conviction was still admissible under Federal Rules of Evidence 413 and 404(b). Subject to Taylor stipulating that he was required to register as a sex offender and that a conviction on Counts One or Two was sufficient to sustain a conviction on Count Three, which Taylor did, the district court prohibited the government from introducing evidence pertaining to the prior conviction during its case-in-chief. The district court reasoned that the prior conviction was inadmissible under Federal Rule of Evidence 403 because of the nature of the conviction and its age. Given the stipulation, the district court removed Count Three from the jury instructions and verdict form. Noting the government's "very strong objections" to its decision, the court stated that it was amenable to revisiting its evidentiary ruling during trial if Taylor's theory of defense or cross-examination opened the door in a way that might cause the court to change its Rule 403 analysis.

Insistent that the district court's ruling on the 2005 conviction was in error, the government then sought to sever Count Three, requiring Taylor to either plead guilty to that count or hold a separate trial on that count. The district court explained that it "would not seriously consider severing anything that would create more issues than it would resolve." The court declined to alter its prior ruling, noting Taylor, by stipulation, had waived any right to have the jury determine whether he was a convicted sex offender and again relying on its Rule 403 analysis.

Still unhappy with the district court's ruling, the government filed a motion to reconsider, requesting that the court again revisit its evidentiary ruling on the 2005 conviction and citing what it perceived as anticipated contested trial issues. The government also added a new argument—the failure to present Count Three to the jury could be fatal to the charge. The court held a hearing on the motion. While proposing bifurcation of Count Three such that if the jury convicted on Counts One, Two, or both, then the jury could be asked to decide whether Taylor was a registered sex offender, the government noted during the hearing that its primary objective was

admission of the 2005 conviction during its case-in-chief. The court denied reconsideration on the admissibility of the conviction and reserved ruling on whether bifurcation or submission of an additional question to the jury on the registered sex offender issue was necessary, without conceding either was required in this case.

Trial commenced. Following the testimony of several witnesses, including R.T. and S.N., the government requested that the court revisit its ruling on the admissibility of the 2005 conviction. The government argued Taylor had opened the door during his cross-examination of the women by saying "things like so-called sexual assaults, or referr[ed] to the activity in this case as sex rather than any kind of sexual assault." The government argued Taylor, by implication, was claiming the sexual encounters, including rape of the minor victim, was consensual sex and not sexual assault. The government highlighted questions Taylor's counsel posed to S.N. and R.T. about whether during the sexual encounters Taylor used aspects of force, such as if the women were tied up, tied down, bruised, choked, visited a doctor, or reported the incident to anyone else. The government argued defense counsel's questions opened the door to admission of the prior conviction in addition to facts underlying the conviction. Taylor persisted in his objections to admission of the conviction.

After reviewing the record, the district court reversed its pretrial rulings and allowed the government to introduce during its case-in-chief evidence pertaining to Taylor's 2005 conviction for criminal sexual assault in the third degree. The court stated that credibility had become "a clear issue with inferences here that, well, one or more of the women just made up the stories, or exaggerated them, or inconsistent to either get out of the trouble they were in, or because of - - in combination of other issues of alcohol or drugs."

After analyzing Rule 403, the court found admissibility would be a closer call without Rule 413, which it found changed the Rule 403 balancing. While recognizing "significant prejudice" in permitting the fact of the 2005 conviction to

be admitted during the government's case-in-chief and Taylor's standing objection to any reference to it, the court found the conviction was probative and the prejudice did not amount to "substantial unfair prejudice." There remained an unsettled issue, however, about which facts or circumstances underlying the conviction were admissible. The government sought to introduce through Taylor's former state probation officer the following evidence: (1) Taylor had been convicted of third degree criminal sexual conduct; (2) the offense conduct included sexual penetration with a known juvenile, who was between the ages of 13 and 16 while Taylor was more than 24 months older than the juvenile; and (3) because of the conviction, Taylor was required to register as a sex offender. After a thorough discussion, Taylor indicated he was "fine" with the admission of the proposed testimony.

Special Agent Tonya Price was called as a government witness. After she stated her name, the court read the following instruction to the jury:

> Members of the Jury, you will hear evidence that the Defendant was convicted of criminal sexual conduct in the third degree in January of 2005. Any person convicted of criminal sexual conduct in the third degree must register as a sex offender. Consequently, the Defendant was required to register as a sex offender in January of 2005.
>
> You may consider this evidence of such other acts of criminal sexual conduct for its tendency, if any, to determine whether the Defendant committed the acts charged in the indictment, including the Defendant's knowledge and his intent.
>
> Remember the Defendant is on trial for only the crimes charged. You may not convict a person simply because you believe he may have committed similar acts in the past.

During her testimony, Special Agent Price informed the jury that she had checked Taylor's criminal history and located a 2005 conviction for third degree criminal sexual assault, which required Taylor to register as a sex offender.

-7-

Later in the trial, Taylor's former state probation officer testified, without objection, consistent with the parties' agreement. She informed the jury that Taylor was on supervision because of a 2005 conviction for criminal sexual conduct in the third degree. She testified as to the facts underlying the offense—that is, Taylor engaged in sexual penetration of a known minor between the ages of 13 and 16 when Taylor was more than 24 months older. The probation officer also testified that beginning in 2005 Taylor was required to register on the Predatory Offender Registration as a sex offender in Minnesota. Taylor's probation officer informed the jury that, during his term of supervision, she met with Taylor monthly. Mostly she met Taylor at his place of employment in Eden Prairie, Minnesota. Occasionally she met Taylor at her office. And twice she met with Taylor at his house where she toured the living room, kitchen, and upstairs bedrooms, but not the basement. Taylor's probation officer told the jury that Taylor's supervision ended on October 17, 2017.

Taylor testified in his own defense. He testified that after the business where he was receiving massages closed, one of the women who had worked there approached Taylor about renting his basement for $300 a month so she had a place to continue her massage business. Because Taylor's basement was occupied by a renter at that time, he permitted her to perform massages in other areas of the house until the renter moved out. Two weeks later, the renter moved out and she began performing massages in the basement.

According to Taylor, over the course of two years, more than 60 women worked at his massage business. Some women paid Taylor $30 for a half hour or $40 for an hour. A.L. was charged $40 for an hour, which was sometimes discounted to $20 for a half hour. Other women Taylor did not charge at all. Others, like R.T., Taylor charged $40 per client. Taylor testified that most of the women performing massages in his house had a key. The women typically worked from 9:00 a.m. to 9:00 p.m. Taylor indicated that he welcomed all these women into his house because he hoped to have a sexual relationship with them.

Taylor's testimony contradicted the women's testimony in many aspects. He testified he did not post ads on Backpage.com unless a woman asked him to do so; he did not sexually assault A.L. or take her to a strip party; he instructed the women to leave the session and text him if they felt uncomfortable for any reason during a massage; the women were not supposed to do anything extra for money no matter how much was offered; and he had no knowledge of any woman performing any kind of commercial sex act. Taylor further testified that he did not care whether the women gave massages to clients because his motivation was in having a sexual relationship with them. Taylor denied that he had in any way coerced, pressured, encouraged, or permitted any woman to engage in sexual acts while performing massages. For impeachment purposes, the district court allowed the government to introduce six prior convictions. Although Taylor did not object at trial, on appeal Taylor challenges the admission of his 1991 conviction for armed burglary and 1993 conviction for forgery.

Taylor unsuccessfully moved for a judgment of acquittal at the close of the government's case-in-chief and again at the close of evidence, asserting the government failed to prove a "commercial sex act" or "venture" and failed to produce sufficient evidence to prove Taylor trafficked A.L. through force, fraud, or coercion. Taylor also moved to dismiss the charge for sex trafficking of a minor (Count One), arguing that it was a lesser offense included of sex trafficking by force, fraud, and coercion (Count Two). The district court denied the motion to dismiss as untimely and on the merits. This appeal followed.

## II.    DISCUSSION

### 1.    Sufficiency of the Evidence

We review the sufficiency of the evidence *de novo*, considering the evidence in a light most favorable to the verdict, and accepting all reasonable inferences that support the verdict. United States v. Bell, 761 F.3d 900, 906 (8th Cir. 2014). "When

a sufficiency argument hinges on the interpretation of a statute, we review the district court's interpretation *de novo*." United States v. Reed, 668 F.3d 978, 982 (8th Cir. 2012) (quoting United States v. Gentry, 555 F.3d 659, 664 (8th Cir. 2009)). We will overturn a verdict only if no reasonable jury could find Taylor guilty beyond a reasonable doubt. See United States v. Thompson, 11 F.4th 925, 929 (8th Cir. 2021).

Taylor does not dispute that S.N. and A.L. gave "happy-ending" massages to customers. He argues instead that a "happy-ending" massage is not a "commercial sex act" within the meaning of 18 U.S.C. § 1591. Taylor contends that a reasonable interpretation of "commercial sex act" requires a sex act involving penetration or sexual abuse as defined in 18 U.S.C. § 2246(2). Taylor's arguments are unavailing.

Taylor was charged under 18 U.S.C. § 1591(a), which provides:

Whoever knowingly—

> (1) in or affecting interstate . . . commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

We have noted "the expansive language of § 1591 'criminalizes a broad spectrum' of conduct relating to the sex trafficking of children." United States v. Jungers, 702

F.3d 1066, 1070 (8th Cir. 2013) (quoting United States v. Jongewaard, 567 F.3d 336, 340 (8th Cir. 2009)).

### A. 18 U.S.C. § 1591 – "any sex act"

While Congress defined "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person," it did not define the phrase "any sex act." 18 U.S.C § 1591(e)(3). Congress's use of the term "any" prior to the term "sex act" is noteworthy. The Supreme Court has explained that "any" is a word with "an 'expansive meaning.'" Freeman v. Quicken Loans, Inc., 566 U.S. 624, 635 (2012) (quoting Dep't of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 131 (2002)). "It can broaden to the maximum, but never change in the least, the clear meaning of the phrase selected by Congress." Id.; see United States v. Gonzales, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New Int'l Dictionary 97 (1976)).

Notwithstanding Congress's use of the word "any," Taylor maintains that "sex act" as used in § 1591 ought to be restricted or limited to sexual conduct involving penetration or contact between two sets of genitalia. Courts have repeatedly rejected this argument. See, e.g., United States v. Bazar, 747 F. App'x 454, 456 (9th Cir. 2018) (finding the ordinary and natural meaning of "any sex act" includes happy-ending massages); Ardolf v. Weber, 332 F.R.D. 467, 477 (S.D.N.Y. 2019) (relying on the plain and ordinary meaning of "sex act" to find that grabbing and fondling a person's genitals for sexual gratification is a "sex act" under § 1591); United States v. Tollefson, 367 F.Supp.3d 865, 879-80 (E.D. Wis. 2019) (finding the ordinary meaning of sex act does not require physical contact or the ultimate act of sexual intercourse but includes acts of sexual gratification generally and masturbation is an act of sexual gratification); Noble v. Weinstein, 335 F.Supp.3d 504, 522-23 (S.D.N.Y. 2018) (finding that forcibly rubbing the victim's vagina and masturbating the defendant to ejaculation meets the statutory definition of "any sex

act" in § 1591).  Congress's decision to use the modifier "any" before the term "sex act" indicates an intent to expand "sex act" to include activities involving sexual gratification such as masturbation.

Notwithstanding Taylor's improbable claims of ignorance, use of the term "happy ending" in the context of the massages being advertised by Taylor and given by the women working for Taylor had a known understanding in the industry, which included the touching of another's genitals for sexual gratification.  Both A.L. and S.N. testified that while working for Taylor they were expected to and did perform "handjobs" for clients in exchange for money.  The witnesses and jury understood "handjobs" to mean direct contact by A.L. and S.N. with clients' genitals for the purpose of sexually gratifying the client.  The testimony at trial was sufficient beyond a reasonable doubt to establish the women were directed and encouraged by Taylor to digitally stimulate client's genitalia in exchange for money—conduct that satisfies the statutory definition of a "commercial sex act."  We, like other courts, decline Taylor's invitation to restrict "sex act" as used in 18 U.S.C. § 1591 (Chapter 77) by incorporating a definition set forth in 18 U.S.C. § 2246(2), which expressly limits its application to offenses in Chapter 109A.  See Bazar, 747 F. App'x at 456 (rejecting argument that the narrower definition of "sexual act" set forth in § 2246 should be imported into § 1591); Tollefson, 367 F.Supp.3d at 879 (noting Congress chose not to cross reference § 2246's definition of "sexual act" and observing that it does not necessarily follow that the terms "sex act" or "sexual act" or "sexual activity" all have the same meaning).

B.     18 U.S.C. § 1591 – "venture"

Taylor next claims there was insufficient evidence establishing the existence of a "venture."  The statute defines "venture" to mean "any group of two or more individuals associated in fact, whether or not a legal entity."  18 U.S.C. § 1591(e)(6). "Participation in a venture" is "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."   18 U.S.C. § 1591(e)(4); see United States v.

Unpradit, 35 F.4th 615, 626 (8th Cir. 2022).  A venture may include a worker, see United States v. Paul, 885 F.3d 1099, 1102-03 (8th Cir. 2018), a supplier, or a purchaser of commercial sex acts, see United States v. Cook, 782 F.3d 983, 987 (8th Cir. 2015).

The government presented evidence showing Taylor posted advertisements for massages, recruited women to work for him at his massage business, answered clients' inquiries about the services available, provided lingerie for S.N. and A.L., drove S.N. and A.L. to his house for the purpose of performing "happy-ending" massages, set the rates for the massages, and received a portion of the clients' payments.  The evidence presented at trial was sufficient to prove beyond a reasonable doubt that Taylor participated in a venture by knowingly receiving money acquired from his massage business, which included assisting, supporting, and facilitating sex trafficking.

> C.      *18 U.S.C. 1591 – "force, threats of force, fraud, coercion . . . used to cause the person to engage in a commercial sex act"*

Lastly, Taylor contends the evidence was insufficient on Count Four, which charged him with sex trafficking of A.L. by force, fraud, or coercion.  See 18 U.S.C. § 1591(a).  Because A.L. was an adult, the government was required to prove Taylor knew or recklessly disregarded that force, fraud, coercion, or any such combination would be used on A.L.  See United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009) (noting minor victims are unable to legally consent so the government is not obligated to prove the elements of fraud, force, or coercion, but it is required to do so for adult victims).  The government need only prove one of the prohibited means.  See Unpradit, 35 F.4th at 624-25 (explaining the government can prove the offense of conspiracy to commit sex trafficking by showing fraud, force, or coercion); United States v. Bell, 761 F.3d 900, 908 (8th Cir. 2014) (noting § 1591(a) is defined in the disjunctive so the government need only prove the defendant "knew or recklessly disregarded that force, threats of force, fraud, *or* coercion would be used on the[] women").

-13-

While "fraud" is not defined in § 1591, this Court has stated that "deception practiced in order to induce another" is "the common meaning" of the term. Paul, 885 F.3d at 1105; see also Webster's Third New International Dictionary 904 (2002) ("[A]n instance or an act of trickery or deceit especially when involving misrepresentation."). Fraud need not have caused the commercial sex act for a defendant to be found guilty under § 1591(a). United States v. Maynes, 880 F.3d 110, 114 (4th Cir. 2018). Evidence presented at trial demonstrated that Taylor knew A.L. and the clients were coming to the massage appointments, which Taylor helped facilitate, with different expectations. Unbeknownst to A.L., clients began arriving at their massage appointment with an expectation that they were to receive a massage involving sexual gratification. When A.L. informed Taylor that clients were repeatedly touching her and asked Taylor why clients were expecting sex acts, A.L. testified that Taylor did nothing more than tell her the clients were there for "just a massage." Although Taylor testified that he told the women they were not supposed to do anything extra and he had no knowledge that sex acts were being conducted as part of the massage, it is within the jury's province to assess credibility and we are not empowered to reweigh the evidence or second guess the jury's credibility determinations. United States v. Dowty, 37 F.4th 489, 494 (8th Cir. 2022).

A determination on whether a defendant's conduct violates 18 U.S.C. § 1591 does not turn on whether the commercial sex was consensual or nonconsensual. Cf. United States v. Rivera, 799 F.3d 180, 185 (2d Cir. 2015) ("But knowing that suggestive behavior or even sexual acts might become a part of the job does not mean that the victims therefore consented to being threatened or coerced into performing sexual acts they did not wish to perform."). Nor does it require a direct (or exclusive) causal link between the fraud and commercial sex act, or even a sex act to have occurred. See United States v. Garcia-Gonzalez, 714 F.3d 306, 312 (5th Cir. 2013) ("The future verb tense of the phrase 'will be caused'—which precedes 'to engage in a commercial sex act'—indicates that a sex act does not have to occur to satisfy the elements of the child-sex-trafficking offense."). A crime under § 1591 is "complete when the defendant recruits, entices, harbors, etc., the victim with

knowledge that the prohibited means will be used in the future to cause them to engage in commercial sex acts." Maynes, 880 F.3d at 114. By engaging in the advertising techniques that he did, Taylor led the clients to believe they had purchased a right to touch and engage in sex acts with A.L. A.L., on the other hand, was unaware of this understanding and had not consented to engage in massages involving sex acts. The evidence is sufficient to show Taylor recruited the women, including A.L., through deception, deceit, and trickery by telling the customers one thing and the women working for him something else. While Taylor told the women there was no expectation of happy-ending massages, he then placed them in a room with customers, who sometimes became aggressive, expecting sexual gratification. A reasonable jury could find fraud was used by Taylor to cause A.L. to engage in commercial sex acts.

Based on the evidence and reasonable inferences, Taylor induced A.L. to work for him in his massage business that he knew, or in reckless disregard of the fact, would cause A.L. to engage in a commercial sex act. The evidence is sufficient to sustain the conviction on Count Four. Maynes, 880 F.3d at 114 ("There is no requirement that a commercial sex act actually occurred, must less that fraud in fact caused the commercial sex act."); see United States v. Roy, 781 F.3d 416, 420 (8th Cir. 2015) (reciting the language in 18 U.S.C. § 1591 and stating a violation occurs if a defendant does "an act with the use of force, threats, fraud, or coercion to cause the victim to engage in commercial sex").

### 2.    Jury Instruction

Taylor argues the district court erred by instructing the jury that a sex act included "happy-ending" massages. A district court errs when it deprives the jury of its ability to make a factual finding. United States v. White Horse, 807 F.2d 1426, 1429 (8th Cir. 1986). The court's duty is to instruct on the law, and it improperly invades the jury province if it applies the law to the facts. Id. at 1430.

Over Taylor's objection, the court instructed the jury that, "The ordinary and natural meaning of any sex act includes happy-ending massages." A review of the record demonstrates that overwhelming evidence established that clients who scheduled appointments with women working for Taylor expected and requested more than a traditional massage. They expected and demanded sexual gratification, which was repeatedly described by witnesses and the lawyers as "handjobs" or "happy-ending" massages. Rather than describe the nature of the contact as a "happy-ending" massage, it would have been preferable to instruct the jury on the physical act at issue—here, digital to genital contact for the purpose of sexual gratification of the client. While the instruction given is not one that we would condone, it is apparent from the record that the evidence tied the reference to "happy ending" to a sex act in exchange for money that was indisputably occurring as part of many of the massages S.N. and A.L. were performing.

Because the nature of the "happy-ending" massages in this case did, by definition, include a sex act, any error in the challenged jury instruction was harmless. Because a reasonable jury would have found Taylor guilty beyond a reasonable doubt—regardless of whether the sex act was defined as a "happy-ending" massage or defined in specific terms as an act involving digital stimulation of the genitals for the sexual gratification of the client—we find Taylor's alleged jury instruction error harmless beyond a reasonable doubt. See United States v. Janis, 810 F.3d 595, 599 (8th Cir. 2016) (determining that while the court abused its discretion by resolving a jury question as a matter of law, the error was harmless beyond a reasonable doubt).

### 3.    Admission of R.T.'s Testimony and Taylor's Prior Convictions

Taylor argues the district court erred when it (1) permitted R.T. to testify about other bad acts Taylor engaged in with her; (2) allowed evidence during the government's case-in-chief regarding his 2005 conviction for criminal sexual assault in the third degree; and (3) admitted Taylor's other felony convictions for

impeachment purposes. Reviewing Taylor's evidentiary challenges for abuse of discretion, United States v. Nordwall, 998 F.3d 344, 347 (8th Cir. 2021), we find none of Taylor's claims warrants relief.

### A.     R.T.'s Testimony

Among other experiences, R.T. testified that Taylor raped her while she was working for him at his massage business. When reviewing a district court's decision, "there is 'strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible.'" United States v. Medicine Horn, 447 F.3d 620, 623 (8th Cir. 2006) (quoting United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997)). Federal Rule of Evidence 413(a) does not require the defendant to be charged with a Chapter 109A offense, only that the charged offenses involve conduct proscribed by Chapter 109A. United States v. Blazek, 431 F.3d 1104, 1109 (8th Cir. 2005). Taylor contends on appeal that R.T.'s testimony was inadmissible under Rule 413(a) because the offenses he was charged with do not involve sexual assault or unlawful sexual contact by him.

We need not resolve Taylor's Rule 413 argument as to R.T.'s testimony because it was admissible under Federal Rule of Evidence 404(b). Prior acts evidence "may be admissible for another purpose [other than propensity], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible under Rule 404(b), evidence must be (1) relevant to a material issue; (2) close in time and similar in nature to the crimes charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect. United States v. Nordwall, 998 F.3d 344, 347 (8th Cir. 2021).

Here, all four 404(b) elements were met for R.T.'s testimony. Her testimony was relevant to material issues, including Taylor's knowledge, intent, and plan of operating a massage business involving commercial sex acts. Taylor challenged the

-17-

victims' credibility, asserting the victims fabricated or exaggerated their stories. He claimed he had no knowledge that women were engaging in commercial sex acts in his house. R.T. testified about her experiences with Taylor that were similar in kind and close in time to the conduct giving rise to the charged crimes. R.T. expressed firsthand knowledge about Taylor. Taylor's contentions that R.T. lacked credibility and was unreliable are issues for the jury. See United States v. Johnson, 860 F.3d 1133, 1143 (8th Cir. 2017). Damaging evidence is always prejudicial; the question is whether the evidence was unfairly prejudicial. To the extent there was potential propensity evidence presented through R.T.'s testimony, it overlapped with permissible uses to show knowledge, intent, and plan such that the probative value of the evidence outweighed the risk of unfair prejudice. Regardless of Rule 413(a), R.T.'s testimony was admissible under exceptions set forth in Rule 404(b)(2).

### B.     2005 Rape Conviction

Admission during the government's case-in-chief of Taylor's 2005 conviction for sexual conduct in the third degree presents a much closer question. While Count Three charged Taylor with committing a felony when he was required under Minnesota law to register as a sex offender, Taylor stipulated that he was a felon who was required to register as a sex offender, negating the need for the government to prove he was required to register as a sex offender. See United States v. Taylor, 122 F.3d 685, 688 (8th Cir. 1997) (noting when a defendant offers to stipulate to a prior conviction, it might be an abuse of discretion under Old Chief v. United States, 519 U.S. 172 (1997) to expose the jury to the name and nature of the prior conviction).

Given the stipulation and Taylor's agreement to allow the district court to impose a conviction on Count Three if the jury found him guilty of Count One or Two, the court indicated, over the government's objection, that it was not going to send Count Three to the jury. For these reasons combined with the court's finding that the balancing required under Rule 403 tipped in favor of exclusion of the

-18-

conviction, the district court initially excluded evidence of the 2005 conviction unless Taylor testified or otherwise opened the door.[2]

Regarding the government's proffered reasons for admission, Taylor was not charged with an offense involving sexual assault. Nor has the government established that he was charged with an offense involving conduct proscribed by chapter 109A. See Blazek, 431 F.3d at 1108-09.

The 2005 rape conviction was not admitted as impeachment evidence, as were Taylor's other felony convictions. Instead, the prior conviction and underlying facts were admitted during the government's case-in-chief. After several government witnesses had testified, at the request of the government, the court reversed its pretrial ruling, finding witness credibility had become an issue such that knowledge and intent were at issue and the Rule 403 balancing had changed in a way that the conviction was now admissible. A review of the record reveals defense counsel had cross-examined the government's fact witnesses using typical tactics: pointing out the witnesses' drug and/or alcohol usage, attempting to impeach the witnesses with prior inconsistent statements, implying the witnesses' factual recitation was faulty or wrong, proposing possible reasons the witnesses had motive to lie, etc. While Taylor initially persisted in his objection to admission of the conviction during the government's case-in-chief, when the government sought the court's permission to elicit testimony from Taylor's probation officer about certain facts underlying the 2005 conviction for which Taylor had been on supervision, Taylor no longer persisted in his objection and indicated the government's proposed questions were "okay" and "fine."

---

[2]Ultimately the jury was asked to decide whether Taylor was guilty on Count Three, only after a guilty verdict was returned on the other counts.

On appeal, Taylor challenges the court's ruling on admission of his prior conviction. Taylor contends that he would not have testified at trial but-for the prejudice caused by admission of evidence regarding the 2005 conviction. Taylor has not asserted the government exceeded the parties' agreement regarding the nature of the probation officer's testimony, which is the point in the trial when the facts underlying the 2005 conviction were introduced. To the extent that Taylor objects to this testimony, he has waived the claim based on his statements made to the district court. See United States v. Robinson, 617 F.3d 984, 989 (8th Cir. 2010) (explaining that where a defendant is aware of a stipulation and does not object, we presume he has acquiesced in his counsel's stipulation, resulting in a waiver of the claim). Notably, the government proposed underlying facts regarding the nature of Taylor's conviction that it sought to elicit through the probation officer. Taylor's counsel started reading his own proposal that included the word "forcibly" and Taylor interjected. Counsel then agreed to proceed with the government's proposal. Since there was no objection to the probation officer's testimony, we presume Taylor acquiesced in the stipulation. See id. (finding no error in the district court's admission of stipulated evidence).

Even if Taylor did not waive his claim, any error was harmless beyond a reasonable doubt. The government bears the burden of identifying "the permissible non-propensity purpose for the evidence, and must articulate the relationship between the evidence and a material issue in the case." United States v. Jackson, 856 F.3d 1187, 1192 (8th Cir. 2017) (quoting United States v. Cotton, 823 F.3d 430, 432 (8th Cir. 2016)). Simple recitation of Rule 404(b) elements, such as knowledge and intent, is generally discouraged. Id. (citation omitted). Rule 404(b) requires something more than stating an exception listed in the rule to ensure the inference the defendant's previous bad conduct invites in jurors' minds is not that the defendant was a bad man in the past and therefore probably committed the crimes for which is his now charged. Nonetheless, even assuming the government did not satisfy its burden of connecting Taylor's prior conviction to a material element of the charged offenses, as Taylor argues, the admission of improper 404(b) evidence

is harmless when "the government introduced ample competent evidence from which the jury could conclude beyond a reasonable doubt that the defendant was guilty even without the evidence that should have been excluded." Cotton, 823 F.3d at 435 (quoting United States v. Aldridge, 664 F.3d 705, 714 (8th Cir. 2011)).

The testimony offered by the women working in Taylor's massage business, if given credence by the jury, is sufficiently strong for us to conclude that the 2005 conviction, even assuming it was improperly admitted, did not have a substantial influence on the jury's verdict. See id. ("An evidentiary error is harmless if it did not substantially influence the jury's verdict."). Additionally, we view the district court's comprehensive limiting instructions given prior to the initial admission of the evidence by Special Agent Price and again during final instructions as important because "the presence of a limiting instruction diminishes the danger of any unfair prejudice from the admission of other acts." United States v. Drew, 9 F.4th 718, 724 (8th Cir. 2021) (quoting United States v. Wright, 866 F.3d 899, 905 (8th Cir. 2017)). Given the limiting instructions and the overwhelming evidence of Taylor's guilt on the charged crimes, the jury could not have been substantially swayed by admission of the 2005 conviction.

## C. 1991 Armed Burglary and 1993 Forgery Convictions

Among others, Taylor's criminal history includes convictions for armed burglary and forgery. He did not object to the admission of these convictions as impeachment evidence. On appeal, he asserts these 26- and 28-year-old convictions were improperly allowed because of their age and the government's lack of written notice of its intent to use them. We review the unobjected to evidentiary issue for plain error. United States v. Eagle, 515 F.3d 794, 801 (8th Cir. 2008). Plain error requires: (1) an error; (2) that was plain; (3) that affected the proponent's substantial rights; and (4) that seriously affects the fairness, integrity, or reputation of judicial proceedings. Id.

As impeachment under Federal Rule of Evidence 609(a), a witness-defendant's prior criminal conviction is admissible if: (1) "the probative value of the evidence outweighs its prejudicial effect to that defendant," or (2) the felony or misdemeanor conviction involved "a dishonest act or false statement." Fed. R. Evid. 609(a); see United States v. Collier, 527 F.3d 695, 699 (8th Cir. 2008). If the conviction or prison release occurred more than 10 years ago, admissibility is appropriate only if (1) the probative value of the conviction substantially outweighs its prejudicial effect, and (2) the proponent gives reasonable written notice to the adverse party about intent to use the conviction. United States v. Shelledy, 961 F.3d 1014, 1023 (8th Cir. 2020).

Taylor is incorrect in claiming the government violated the notice requirement in Federal Rule of Evidence 609(b)(2). On December 12, 2018, a few weeks before trial, Taylor was put on notice by the government that his felonies may be used at trial if he testified or put his character for truthfulness at issue. Taylor testified. He denied knowing that any commercial sex acts were taking place at his house. He denied posting ads of S.N. or A.L. on Backpage.com. He denied having a sexual relationship with S.N. He claimed that he did not care if the women at his house were performing massages and that the reason he allowed them to be there was to engage in consensual sexual relationships with them. Witness credibility thus was a significant issue for the jury to resolve.

The government questioned Taylor about the fact of the prior convictions, not any of the underlying conduct. It did not reference these convictions during closing argument. The district court instructed the jury on how it could consider evidence of other bad acts. After carefully reviewing the record, Taylor has failed to articulate how the admission of these two convictions affected his substantial rights, particularly when there were four other felony convictions also introduced that he does not challenge. Given the overwhelming evidence presented at trial, the brief mention of these convictions, and the court's limiting instruction on prior bad acts, we cannot conclude under a plain error standard that evidence of these prior

convictions called into question the fairness, integrity, or public reputation of the proceedings.

### 4.    Double Jeopardy

Taylor argues the two convictions involving S.N. violate the Double Jeopardy Clause of the Fifth Amendment because Count One is a lesser-included offense of Count Two.  We review double jeopardy clause claims *de novo*.  United States v. Hansen, 944 F.3d 718, 721 (8th Cir. 2019).  To establish a double jeopardy violation, Taylor must show the offenses are the same in law and fact.  United States v. Muhlenbruch, 634 F.3d 987, 1002 (8th Cir. 2011).  We examine whether each statute "requires proof of a fact that the other does not."  United States v. Hansen, 944 F.3d 718, 724 (8th Cir. 2019) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)).

The government charged Taylor with two separate counts involving S.N.: sex trafficking of a minor and sex trafficking by force, fraud, and coercion.  To prove sex trafficking of a minor in Count One, the government was required to prove that S.N. was over 14 and under 18 years old.  There is no requirement that the offense involve force, fraud, or coercion.  Count Two does not require any showing of age but does require a showing of force, fraud, or coercion.  Other circuits have uniformly found that multiple subsections of 18 U.S.C. § 1591 constitute different offenses.  See United States v. Keys, 747 F. App'x 198, 206 (5th Cir. 2018) (explaining subsections (b)(1) and (b)(2) of § 1591 require proof of different elements, each of which requires different evidence); United States v. Flanders, 752 F.3d 1317, 1338 (11th Cir. 2014) ("A plain reading of § 1591(a)(1) and (a)(2) demonstrates that the two subsections meet the Blockburger test of whether separate convictions are authorized."); United States v. Moss, 379 F. App'x 651, 653 (9th Cir. 2010) (determining there is no double jeopardy violation if a defendant is convicted under both 18 U.S.C. § 1591(a)(1) and (a)(2)).

Because the two counts involving S.N. each require proof of an element that the other does not, Taylor's double jeopardy claim is without merit.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I join the opinion except as to Section II.1.C and the affirmance of Taylor's conviction on Count 4, which charged Taylor with sex trafficking of A.L. by force, fraud, or coercion.  *See* 18 U.S.C. § 1591(a).

As the court notes, we have said that "fraud" in § 1591(a) means "deception practiced in order to induce another."  *See United States v. Paul*, 885 F.3d 1099, 1105 (8th Cir. 2018).  But not all fraud falls within the statute's ambit; it must be fraud that the defendant knows will be "used to cause the person to engage in a commercial sex act."  § 1591(a).  Understood in context, this language captures deceptions practiced to induce another "to engage in a commercial sex act," not deceptions practiced to induce other conduct, such as accepting a job as a masseuse.  *See id.*

Section 1591(a) hinges criminal liability on several alternative conditions, requiring the defendant to know or recklessly disregard the fact that means of (1) "force," (2) "threats of force," (3) "fraud," (4) or "coercion"[3] will be used to cause the victim to engage in a commercial sex act, or that (5) a victim having "not attained the age of 18 years" will be caused to engage in a commercial sex act.  Congress did not select these at random, arbitrarily choosing five among innumerable conditions that would make any crime more serious.  Rather, these terms are *ejusdem generis*,

_____

[3]The Government's brief argues only that fraud, rather than force, threats of force, or coercion, underlies Taylor's conviction on Count 4.

-24-

"of the same kind," *see* "Ejusdem Generis," *Black's Law Dictionary* (11th ed. 2019), in that each condition alters the character of a sex act by vitiating the victim's consent, *see, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973) (noting that consent is invalid where "it was coerced by . . . [(1)] force" or by (2) "threats"); *Stewart v. United States*, 151 F.2d 386, 388 (8th Cir. 1945) (holding that "there is an absence of real consent" where it is "secured by means of [(3)] fraud"); *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968) ("Where there is [(4)] coercion there cannot be consent."); *United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) (noting that the victims "could not legally consent" because (5) they "were minors"); *cf.* 22 U.S.C. § 7106(a)(2) (directing foreign governments to punish "sex trafficking involving force, fraud, coercion, or in which the victim of sex trafficking is a child *incapable of giving meaningful consent*" (emphasis added)).  Thus, in *Elbert*, where the victims were underage, we held that "the government did not need to prove the elements of fraud, force, or coercion" "because the victims were minors and *could not legally consent*."  561 F.3d at 777 (emphasis added).  The minor victims were therefore "caused to engage" in sex acts, *id.* (quoting § 1591(a)), where the defendant had "instructed the children to work as prostitutes," *id.* at 774.

Congress's intent is evident in the text; the five alternative conditions were written into this sex-crime statute because each renders the sex act nonconsensual.[4] *Cf. McDonough v. Anoka Cnty.*, 799 F.3d 931, 940 (8th Cir. 2015) (noting that "the

---

[4]This distinguishes § 1591(a), which carries a *minimum* sentence of fifteen years' imprisonment, *see* § 1591(b)(1), from otherwise similar sex crimes.  For example, 18 U.S.C. § 2421(a) prohibits the knowing transport of an individual with the intent that the individual engage in prostitution or unlawful sexual activity.  That is a crime irrespective of whether the individual consents to sex, and it carries a *maximum* sentence of ten years' imprisonment.  *Id.*  Any conviction of sex-trafficking by fraud necessarily carries a higher sentence—potentially life—than any § 2421(a) conviction.  That severe increase in sentencing is proportionate to the "severe forms of trafficking" criminalized by § 1591(a), *see* Pub. L. No. 106-386, 114 Stat. 1464, 1466, 1470 (2000); that is, sex-trafficking schemes where victims are made to have sex without their consent, not schemes to arrange consensual sex that happen to involve fraud.

text and structure of a statute can evince Congress' intent" (internal quotation mark omitted)). This purposeful commonality informs the meaning of "used to cause." *See* § 1591(a); *Neal v. Clark*, 95 U.S. 704, 709 (1877) ("[T]he meaning of a word, and, consequently, the intention of the legislature, [is] ascertained by refer[e]nce to the context, and by considering whether the word in question and the surrounding words are, in fact, *ejusdem generis*, and referable to the same subject-matter."). As *Elbert* illustrates, minor victims are "caused to engage" in commercial sex acts in the relevant sense that the sex acts occurred without their valid consent. *See* 561 F.3d at 777. Likewise, force, threats of force, fraud, and coercion are "used to cause the [victim] to engage" in commercial sex acts, § 1591(a), only if they render the sex acts nonconsensual—they induce (in the case of fraud) or compel the victim's participation, *see, e.g.*, *Paul*, 885 F.3d at 1103 (upholding a sex-trafficking conviction where the defendant threatened his victims and ordered them to prostitute themselves); *United States v. Bell*, 761 F.3d 900, 909 (8th Cir. 2014) (similar); *United States v. McMillian*, 777 F.3d 444, 447 (7th Cir. 2015) (holding that the evidence established sex trafficking based on fraud where the defendant enticed women to engage in prostitution through "false promises of love and money"). The statute does not cover the employment of such means to induce or compel someone to do something else in hopes that later on, she will *consensually* decide to engage in a commercial sex act.

Attention to context is particularly vital when interpreting the phrase "used to cause." *See Bailey v. United States*, 516 U.S. 137, 148-49 (1995) (noting that the word "'use' takes on different meanings depending on context"); *Smith v. United States*, 508 U.S. 223, 245 (1993) (Scalia, J., dissenting) (noting that the word "use" is among "common words that are . . . inordinately sensitive to context"); *cf. Paroline v. United States*, 572 U.S. 434, 458 (2014) ("It would be unacceptable to adopt a causal standard so strict that it would undermine congressional intent . . . ."). Suppose a statute required licensure where "a hammer is used to cause a house to be built." A man wants to hire a construction crew to build a house. To select the right crew, he uses a hammer and nail to post signs around town inviting contractors to

submit bids. In this example, the context makes obvious that the prospective homeowner need not obtain a license even though he "used" a hammer for the purpose of eventually getting his house constructed. And the scope of the hypothetical provision becomes even clearer if it lists multiple items—"hammer, nail, or saw"—that are *ejusdem generis*, sharing a common function in the context of home construction.

A similar contextual approach applies here. Just as a hammer, nail, and saw must be used in the way that such tools are ordinarily understood to cause houses to be built, so too the alternative means in § 1591(a) must be "used to cause" a person to engage in a commercial sex act in the way that force, threats, fraud, and coercion are ordinarily understood to "cause" sex acts; that is, through inducing or compelling the sex act itself, depriving the victim of valid consent. *See Niz-Chavez v. Garland*, 593 U.S. ---, 141 S. Ct. 1474, 1484-85 (2021) (explaining that when interpreting a statute, "[w]e simply seek the law's ordinary meaning," consulting interpretive tools because they "inform how ordinary people understand the rules that govern them").

Applying this interpretation to the fraud element, a conviction under § 1591(a) requires proof of the defendant's knowledge that deceptions will be practiced to "induce," which means to "entic[e] or persuad[e]," the person to engage in a commercial sex act. *See* "Inducement," *Black's Law Dictionary* (11th ed. 2019); *Paul*, 885 F.3d at 1105. When deceptions persuade someone to engage in nonsexual conduct, fraud has not been "used to cause [someone] to engage in a commercial sex act" in the relevant sense. *See* § 1591(a). In other words, such fraud would not be "material" to the sex act. *See Neder v. United States*, 527 U.S. 1, 22-23 (1999) (holding that a statutory "fraud" element entails a "materiality" element unless the statute dictates otherwise).

On this interpretation, there is insufficient evidence to convict Taylor of sex-trafficking A.L. by fraud. Although Taylor undoubtedly deceived A.L.—he promised her that clients expected "just a massage," not sexual acts—that deception

-27-

was immaterial because all it induced her to do was work for Taylor as a masseuse. This case aptly illustrates the contrast between fraud that is excluded by the statute and fraud that is covered; here Taylor's misrepresentation persuaded A.L. only to do the *opposite* of what covered fraud would induce—it persuaded her to accept a job on the understanding that it would involve no sex acts of any kind. Compare this to *Noble v. Weinstein*, where the defendant persuaded the victim *to engage in* a sex act by falsely promising that she would be chosen for a film role. 335 F. Supp. 3d 504, 519 (S.D.N.Y. 2018). Only in cases like *Noble*, where the sex act is the immediate object of the inducement, can fraud support a conviction.

Nor is there sufficient evidence to convict Taylor of sex-trafficking A.L. by force, threats of force, or coercion. The record does not support Taylor having knowledge that force, threats of force, or coercion were used against A.L. True, construing the record in favor of the jury verdict, A.L. was coerced by a client the one time she engaged in a sex act. But A.L. testified that she never told Taylor about it. And although Taylor created a mismatch in expectations between clients and A.L., that does not show that he knew or recklessly disregarded the fact that clients would threaten to harm her seriously or restrain her physically when she failed to engage in a sex act with them. *See* § 1591(e)(2)(A) (defining "coercion"). On this record, a jury could not reasonably find beyond a reasonable doubt that Taylor knew or recklessly disregarded the fact that force, threats of force, or coercion would be used against A.L.

For the foregoing reasons, I would reverse Taylor's conviction on Count 4. Because the court instead affirms it, I respectfully dissent as to that affirmance and Section II.1.C. I concur in the remainder of the court's opinion.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

I join all but Part II.1.A. of the opinion.

_____

-28-